554 F.2d 730
 15 Fair Empl.Prac.Cas. 139, 14 Empl. Prac.
Dec. P 7655
F. Ray MARSHALL, Secretary of Labor, United States
Department of Labor, Plaintiff-Appellee,
v.
The GOODYEAR TIRE & RUBBER COMPANY, Defendant-Appellant.
 No. 75-3217.
 United States Court of Appeals,
Fifth Circuit.
 June 24, 1977.
 
 Wayne Thomas, Marvin E. Barkin, Tampa, Fla., for defendant-appellant.
 John L. Briggs, U. S. Atty., Jacksonville, Fla., Beverley R. Worrell, Regional Director, U. S. Dept. of Labor, Atlanta, Ga., Donald S. Shire, Wm. J. Kilberg, Solicitor of Labor, Carin Ann Clauss, Assoc. Sol., Jacob I. Karro, Paul D. Brenner, Attys., Bobbye D. Spears, Reg. Sol., Dept. of Labor, Washington, D. C., for plaintiff-appellee.
 Appeal from the United States District Court for the Middle District of Florida.
 Before GEWIN, RONEY and HILL, Circuit Judges.
 GEWIN, Circuit Judge:
 
 
 1
 After unsuccessful informal attempts to resolve the dispute, the Secretary of Labor sued appellant Goodyear Tire & Rubber Company ("Goodyear" or "the Company") alleging a violation of the Age Discrimination in Employment Act of 1967 ("ADEA").[1] The allegation concerned the discharge of William G. Reed, Jr., and appellee sought to enjoin further violations and to recover Reed's lost wages. The district court found the violation alleged and granted the requested relief, including a nationwide injunction against further violations. The Company appeals. We affirm in part, vacate in part and remand.
 
 
 2
 Goodyear is engaged in the operation of retail service stores, including one in Auburndale, Florida. Alonzo Turner, manager of the Auburndale service store, on June 12, 1973 hired Reed (age 57) to do sales and collection work. Turner testified that he hired Reed specifically because of his age, as he felt Reed would be a more mature, stable individual than the younger people who usually applied for the position. Within two weeks, according to Turner, he determined that Reed was unable to do the job. He did not replace him immediately, however, because of a shortage of employees.
 
 
 3
 Turner went on a vacation during the last week of July, 1973, during which time Glenn Coleman acted as store manager. Coleman became the Auburndale manager on August 1, Turner becoming manager of the Haines City store on August 6. Thus Coleman and Turner worked together at Auburndale during the interim period in early August. Turner testified that before his vacation and during the interim he discussed Reed's shortcomings with Coleman.
 
 
 4
 Coleman discharged Reed on August 11, 1973, telling him either that he did not fit Coleman's plans or that his performance was not up to Coleman's expectations. Shortly thereafter Coleman placed an employment advertisement in a local newspaper requesting sales applicants between the ages of 19 and 26. Reed's position ultimately was filled by Terry Gray, age 19.
 
 
 5
 The Secretary's investigation also uncovered evidence that age preferences were stated in Goodyear job orders placed with a local employment agency, and substantial evidence was introduced on the matter. Ms. Shirley Riggs, manager of AAA Employment Service ("Triple A"), testified that a compliance officer of the Department of Labor reviewed Triple A's job orders, which are forms containing information about jobs given by employers over the telephone. The officer, Stanton Morgan, found that some of the orders included age preferences, and he discussed with Riggs some of the legal limits on age discrimination. Morgan transcribed the job orders he reviewed. After he left the agency's office, Riggs wrote "corrected" orders[2] or wrote job-related information over the offending age preferences.
 
 
 6
 On July 31, 1973, Coleman placed a job order with Triple A for a sales trainee. The sheet containing that order was one of those corrected by Riggs. It was introduced as an exhibit and, as a consequence of the correction, does not contain an age preference. Riggs testified that this Goodyear order was one in which a change was made and that she believed the original contained an age preference. Compliance Officer Morgan, although his transcriptions of the originals were not admitted into evidence, could testify from independent recollection that the original July 31 Goodyear order contained an age preference. Coleman testified that he placed a job order with Triple A, but he did not remember a reference to age. Riggs stated, however, that the orders contained age preferences only when that factor was mentioned by employers.
 
 
 7
 The Secretary also sought to establish the placement of a job order with an age preference by another Goodyear store, in Lakeland, Florida. The original of that order does exist, is dated August 23, 1973, and was admitted into evidence. It is apparent that a phrase like "Prefer Some Sales (Experience or Background)" is written over some other words, but it is difficult to decipher what the original words are. Officer Morgan did not testify about his recollection of the August 23 order. Although Riggs' testimony as to that order is somewhat contradictory, she did state that she had written the additional language over what she "imagined" was an age preference.
 
 
 8
 The district judge made no express findings as to the job order incidents. He did find, however, that Reed was discharged in violation of 29 U.S.C. § 623(a) (1), ADEA § 4(a)(1),[3] based on his conclusion that the Secretary established a prima facie case and that the Company "failed to carry its burden of showing that said discharge was within the exception of 'good cause.' " The court then permanently enjoined Goodyear from violating section 4(a) of the ADEA, and enjoined it from withholding lost wages due Reed in the total amount of $2,963.63 plus interest.
 
 
 9
 Appellant primarily complains of the scope of the injunction. The court found a single violation Reed's discharge involving only the actions of the Auburndale store manager. This limited finding does not warrant such broad injunctive relief. Issuance of an injunction rests primarily in the informed discretion of the district court. Hodgson v. First Federal Savings & Loan Association, 455 F.2d 818, 825 (5th Cir. 1972). Yet injunctive relief is a drastic remedy, not to be applied as a matter of course. NLRB v. Express Publishing Co., 312 U.S. 426, 433, 435-36, 61 S.Ct. 693, 698, 699, 85 L.Ed. 930, 935, 937 (1941); Hodgson v. American Can Co., 440 F.2d 916, 920 (8th Cir. 1971) (Fair Labor Standards Act).
 
 
 10
 In determining the limitations on a district court's discretion to issue an injunction, it is appropriate to look to the ADEA, to Fair Labor Standards Act cases, since the ADEA can be enforced through FLSA provisions, and to cases involving other federal statutes regulating employment discrimination. ADEA § 7(b), 29 U.S.C. § 626(b), states that "(i)n any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter . . . ." (emphasis added). The ADEA substantially parallels Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and a similar general restriction on the district court's power is evident. Under Title VII injunctive relief is appropriate to remedy continuing wrongs and must be tailored to achieve that purpose. Myers v. Gilman Paper Corporation, 544 F.2d 837, 854, 855 (5th Cir. 1977); Stevenson v. International Paper Company, 516 F.2d 103, 118 (5th Cir. 1975).
 
 
 11
 Equal Pay Act,[4] FLSA, and ADEA cases all establish that a nationwide or companywide injunction is appropriate only when the facts indicate a company policy or practice in violation of the statute. For example, in the leading ADEA case of Hodgson v. First Federal, supra at 825-26, we held that the evidence entitled the Secretary to a broader injunction than that issued by the district court. The employer had a main office and five branches, all in one county. Evidence indicated that the hiring was done centrally by one personnel officer and that he had rejected several applicants for tellers' positions because of their age. The district court enjoined future violations of the ADEA "with regard to the hiring of tellers." On appeal this court concluded that the Secretary's evidence indicated the existence of a discriminatory hiring policy by the employer. One of the applicants, for example, was rejected for any job, not just for a teller's position. Moreover, the employer had also placed a newspaper advertisement seeking a " young man" for the position of financial advertising assistant. Inasmuch as the proof showed a company policy of hiring discrimination extending beyond the category of tellers' positions, a broad injunction against the employer's future discriminatory hiring based on age was appropriate.
 
 
 12
 This approach is also seen in Brennan v. J. M. Fields, Inc., 488 F.2d 443, 449-50 (5th Cir.), cert. denied, 419 U.S. 881, 95 S.Ct. 146, 42 L.Ed.2d 121 (1974). There this court affirmed the district court's issuance of an injunction against the employer's entire operations, which included more than sixty retail outlets, on the basis of violations of the Equal Pay Act at three of them. The Secretary defended the injunction on the ground that the New York office's close centralized supervision of wage scales and pay policies indicated a company policy with regard to the pay differential. This court agreed with that contention.[5] Conversely, the Second Circuit has held that "absent a showing of a policy of discrimination which extends beyond the plants at issue . . ., there is no basis for a nationwide injunction." Hodgson v. Corning Glass Works, 474 F.2d 226, 236 (2d Cir. 1973) (Friendly, C. J.), aff'd on other grounds, 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). Accordingly, the court limited the injunction's effect to the three plants in Corning, New York, where violations were shown, lifting its effect from the 26 other branch plants.[6]
 
 
 13
 The Secretary contends that in the instant case there is sufficient proof of multiple violations to warrant a nationwide injunction, relying on the proof of a discriminatory job order placed by the Lakeland store. There are several difficulties in accepting this position. The principal difficulty is that the evidence as to the Lakeland incident is slight, the district court made no findings with respect to it, and the court did not rely on it in determining the scope of the injunction. The court relied solely on Reed's discharge for its order and judgment. It made no finding of discriminatory company policy or practice. Indeed, the district judge expressed the view that "Goodyear itself is committed to the principles of the Age Discrimination Act" and that Reed's discharge was the isolated action of Auburndale manager Coleman, who "believes that he can best run an organization if he has just got young people around."[7]
 
 
 14
 Most logically, if the job order incidents can support any injunction, it would be an injunction aimed at ADEA § 4(b) or (e) violations (discrimination by an employment agency; age preferences in job ads) rather than section 4(a) (discrimination with respect to hiring, wages, and terms and conditions of employment). The Secretary sought only the latter, and the district court's findings are related only to the latter. As seen in Hodgson v. First Federal, supra, proof of other section 4 violations lends support to a finding of a company policy or practice in violation of section 4(a). That simply involves a logical evaluation of the evidence and reasonable inferences that can be drawn therefrom. It would be unreasonable to conclude that the isolated discharge of Reed at Auburndale is transformed into a discriminatory company policy through some proof of two discriminatory job orders in Auburndale and Lakeland.
 
 
 15
 In sum, the district judge relied only on the isolated fact of Reed's discriminatory discharge in enjoining appellant nationwide. He not only did not find a discriminatory company policy, he apparently found that the discharge resulted from store manager Coleman's individual prejudices. The latter may suggest the need for some form of injunctive relief. In light of the authorities discussed above, such relief should be limited to the Auburndale store. Consequently, we remand the case for the district court's further consideration of the scope of injunctive relief.[8]
 
 
 16
 Appellant also contends that the district court erred in finding that Reed's discharge was discriminatory, based on the court's alleged misunderstanding of our holdings as to prima facie case and burden of proof. Considerable confusion has attended opinion discussions of prima facie case and burdens of proof under the ADEA. See Lopatka, supra n.4, at 155; Note, 90 Harv.L.Rev. 380, 388-94 (1976). The district court, however, did not err in applying those terms here.
 
 
 17
 Appellant contends that in an ADEA case plaintiff's prima facie case must include proof of (1) the employee's membership in the protected group; (2) his discharge; (3) his replacement with a person outside the protected group; and (4) his ability to do the job. Since there is no proof that Reed was qualified to do the job, the argument goes, the Secretary failed to make a prima facie case. The four elements listed above parallel the elements of the prima facie Title VII case discussed in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677-78 (1973). We have held that these elements constitute a prima facie ADEA case as well. Lindsey v. Southwestern Bell Telephone Company, 546 F.2d 1123, 1124 (5th Cir. 1977); Wilson v. Sealtest Foods Division of Kraftco Corporation, 501 F.2d 84, 86 (5th Cir. 1974).
 
 
 18
 McDonnell Douglas does not establish an immutable definition of a prima facie case. The phrase simply refers to evidence sufficient for a finding in plaintiff's favor unless rebutted. United States v. Wiggins, 39 U.S. (14 Pet.) 334, 347, 10 L.Ed. 481, 488 (1840). The Court recognized that principle in McDonnell Douglas, for it noted that "(t)he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required . . . is not necessarily applicable in every respect to differing factual situations." 411 U.S. at 802 n.13, 93 S.Ct. at 1824 n.13, 36 L.Ed.2d at 677 n.13. See also Peters v. Jefferson Chemical Company, 516 F.2d 447, 450 (5th Cir. 1975).
 
 
 19
 The district court found that Coleman's decision to discharge Reed was tainted by the impermissible criterion of age,[9] which was inferred from Coleman's placement of the discriminatory job order and advertisement. Thus, the court concluded that the Secretary established a prima facie case by proving that (1) Reed was within the protected group; (2) Reed was discharged; (3) Coleman sought to replace him with a younger person; and (4) he was replaced by a younger person outside the protected group. The district court was correct in concluding that these facts established a prima facie case. The most reasonable inference from these facts is that Reed was discharged because of his age. Indeed, the prima facie case here is arguably stronger than one resting on the McDonnell Douglas factors. Because the aging process causes employees constantly to exit the labor market while younger ones enter, simply the replacement of an older employee by a younger worker does not raise the same inference of improper motive that attends replacement of a black by a white person in a Title VII case. Laugesen v. Anaconda Company, 510 F.2d 307, 312-13 n.4 (6th Cir. 1975).
 
 
 20
 Once the Secretary made a prima facie showing, the burden of going forward with the evidence shifted to the defendant employer. Bittar v. Air Canada, 512 F.2d 582 (5th Cir. 1975); Hodgson v. First Federal, supra at 822. The district judge heard and saw all the evidence and concluded that plaintiff should prevail. He also had the benefit of appellant's argument based on Bittar v. Air Canada when he denied its motion to alter or amend the judgment. Implicit in the findings and the denial of that motion is the conclusion that appellant did not go forward with sufficient evidence to rebut the prima facie case. We cannot say that the district court's conclusion is clearly erroneous. Federal Rule of Civil Procedure 52(a).
 
 
 21
 Exercising the discretion committed to it by statute,[10] the district court did not deduct from the back pay award payments received by Reed as unemployment compensation after his discharge. We are not inclined to hold on the facts of this case that the court abused its discretion. There is precedent for such deference to the trier of fact. In NLRB v. Gullett Gin Company, 340 U.S. 361, 364, 71 S.Ct. 337, 339, 95 L.Ed. 337, 342 (1951), the Court held that the Board did not abuse its discretion in refusing to deduct unemployment compensation from back pay, saying:
 
 
 22
 Such action may reasonably be considered to effectuate the policies of the Act. To decline to deduct state unemployment compensation benefits in computing back pay is not to make the employees more than whole, as contended by respondent. Since no consideration has been given to collateral losses in framing an order to reimburse employees for their lost earnings, manifestly no consideration need be given to collateral benefits which employees may have received.
 
 
 23
 In conclusion, we affirm the finding of discriminatory discharge and that part of the judgment enjoining appellant from withholding wages due Reed in the amount calculated by the district court. That part of the judgment enjoining violations of ADEA § 4(a) is vacated, must be modified, and the case is remanded for that purpose.
 
 
 24
 AFFIRMED in part, VACATED in part and REMANDED.
 
 
 
 [1]
 29 U.S.C. § 621 et seq. ADEA § 7(b), 29 U.S.C. § 626(b), incorporates by reference the civil enforcement provisions of the Fair Labor Standards Act allowing the Secretary to seek injunctions and to recover lost wages on behalf of wronged employees. Id. §§ 216(b), (c). Jurisdiction is conferred upon the district courts by id. § 217. If the Secretary does not seek relief for an alleged violation of ADEA, an aggrieved individual can do so. Id. § 626(c)
 
 
 [2]
 She destroyed the originals
 
 
 [3]
 (a) It shall be unlawful for an employer
 (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age; . . . .
 
 
 [4]
 29 U.S.C. § 206(d). This provision is actually part of the FLSA, but it has spawned a particular set of legal problems. See Lopatka, A 1977 Primer on the Federal Regulation of Employment Discrimination, 1977 U.Ill.L.F. 69, 118-21
 
 
 [5]
 Evidence introduced at trial indicated that Fields' hiring and wage policies were subject to centralized control of a significant degree. It was hardly an abuse of discretion in these circumstances for the district court to enjoin Fields as a corporate defendant rather than to enter a limited injunction against the individual stores found to be in violation of the Equal Pay Act
 488 F.2d at 449.
 
 
 [6]
 The other cases relied upon by the Secretary do not help him. In Hodgson v. Approved Personnel Service, Inc., 529 F.2d 760, 764 (4th Cir. 1975), the court held that the district court should have granted a broad injunction against the employment agency in light of the 20 to 30 violations found and the breaking of the agency's repeated informal promises to comply with the Act
 The case of Wirtz v. Ocala Gas Company, 336 F.2d 236 (5th Cir. 1964), is simply not in point. Ocala Gas involved interpretation of a broad decree to which the company's president consented. It was held that the injunction applied to the operations of the corporation succeeding from the merger of Ocala Gas with another company controlled by Ocala Gas's president and his family. Id. at 238-40. It is interesting to note that in Ocala Gas the court noted the general rule that an injunction is warranted where there is a likelihood of further violations. The complementary rule is obviously that an injunction's scope should not exceed the likely scope of future violations. Hodgson v. Corning Glass Works, supra; Hodgson v. First Federal, supra.
 
 
 [7]
 The district judge, in his remarks at the end of trial, faulted Goodyear for not better policing the hiring decisions of local store managers, and he apparently thought a broad injunction would encourage greater oversight. The ADEA, however, does not require centralized supervision of employment decisions. Under the Act and the authorities cited above, therefore, imposition of that burden on the Company is unwarranted absent proof, at least, of a company policy or numerous violations
 
 
 [8]
 Appellant also suggests that the injunctive order is defective because it enjoins violations of ADEA § 4(a) without specifying the exclusions of section 4(f). An injunction issued on remand must give the employer the benefit of the section 4(f) exclusions. See Hodgson v. First Federal, supra at 827
 
 
 [9]
 Wilson v. Sealtest Foods Div., supra at 86
 
 
 [10]
 ADEA § 7(b) grants the district court jurisdiction to grant such relief "as may be appropriate," including the enforcement of an employer's liability for lost wages