**C. W. SMITH, Plaintiff-Appellant,**

v.

**FARAH MANUFACTURING COMPANY, INC., Defendant-Appellee.**

No. 80–1387.

United States Court of Appeals, Fifth Circuit.

Unit A

July 6, 1981.

---

Pearson, Caballero & Warach, Raymond C. Caballero, El Paso, Tex., for plaintiff-appellant.

Kolodey & Thomas, Robert Frank Maris, Dallas, Tex., for defendant-appellee.

Before CHARLES CLARK and GEE, Circuit Judges, and SPEARS *, District Judge.

CHARLES CLARK, Circuit Judge:

The plaintiff, C. W. Smith, brought this action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., claiming that his employer, Farah Manufacturing Company, had discharged him because of his age. After a nonjury trial, the district court found that Farah had terminated Smith's employment as a part of a wholesale reduction in work force and not because of his age. The district court's factual findings are not clearly erroneous and support its conclusion that Farah did not violate the ADEA. We affirm.

* District Judge of the Western District of Texas sitting by designation.

## I.

Smith began his tenure with Farah in 1954 as a truck driver and was discharged from his position in 1978 at age 62. The evidence shows substantially without dispute that he was an able, diligent, hard-working, and productive employee, and his employment history is marked by a gradual rise in salary and responsibilities. In 1966, Smith became supervisor of Farah's transportation department. In that capacity, Smith had responsibility for the maintenance and repair of trucks, automobiles, and other rolling stock owned by Farah; purchase and sale of vehicles and procurement of automotive parts; and short and long haul truck scheduling. In 1975, another Farah employee assumed responsibility for scheduling long haul trucks.

On May 31, 1978, Farah gave Smith a Notice of Separation from Employment. The release slip stated that the reason for his termination was a reduction in work force. Although the notice was effective immediately, Farah continued to pay Smith until July 31, 1978. At the time of his discharge, Smith's salary was $21,000 a year.

The record reveals that the 1978 reduction in work force was prompted by Farah's precarious financial condition. Between 1970 and 1972, Farah had enjoyed a dramatic 23% rate of growth with a sales volume around $155 million. In 1972, Farah employed approximately 10,000 workers of which about 500 were salaried employees.

A May, 1972, labor dispute triggered a period of financial reversal for Farah which extended over the next few years. It posted losses of $21 million in 1976 and $10 million in 1977. Sales dropped off precipitously during both years. Farah cut its labor force by nearly 1,000 employees in 1976, and its declining fortunes forced closure of several plants in 1977 accompanied by employee layoffs.

By April, 1978, Farah confronted a dire financial crisis. It had already suffered losses in every quarter since the fourth quarter of 1975, and sales were steadily declining. During the first five months of fiscal 1978, Farah lost $2,651,000 and in March alone lost $600,000. The company was insolvent and had only enough cash on hand to survive two and a half days. It was overstocked with unsaleable goods, overdrawn $2,970,000 on its line of credit, and technically in default on its loan obligations. In addition, it had another $1 million loan coming due within 90 days and no source of funds to make the payments. By one estimate, the company could survive no more than 30 days.

To resolve this financial crisis, Farah developed a comprehensive plan to cut expenditures, raise cash, and reduce the inventory level. The company determined that it needed to cut $700,000 a month in expenses. Part of its plan included an across-the-board personnel reduction, resulting in savings of about $150,000 a month on salaried employees and $100,000 a month on hourly employees. Accordingly, Farah laid off 39 of the total 256 salaried employees working in 1978. Of this 39 employees, 23, or 59%, were less than forty years old; 16, or 41%, were forty years of age or older. These percentages corresponded closely to the age distribution in the salaried employee class.[1]

To accomplish this personnel reduction, Farah also combined some previously separate job functions. As one example of such consolidations, the transportation department was combined with two other departments, building maintenance and machine shop. Julian Dow, the former head of the machine shop, became the supervisor of this newly consolidated department. He was 38 years old. Frank Gilchrist, former head of the building maintenance department, resigned. The plaintiff, Smith, was discharged. Before consolidation, Smith was the only salaried employee in the transportation department, its oldest employee, and its only employee terminated.

---

1. Of the 256 salaried employees at Farah in 1978, 151 were under 40 years old and 105 were 40 or older.

After the case was fully tried before the district court sitting without a jury, the district court found that Farah terminated Smith's employment in order to reduce expenses during financially troubled times and that his age was not a factor in that decision. The court also found that Farah selected Dow over Smith to head the newly consolidated department because he was qualified to supervise and manage the three different functions of machine shop, building maintenance, and transportation and Smith was not.

## II.

In *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677 (1973), a Title VII action, the Supreme Court set out what a plaintiff charging racial discrimination in employment must prove to establish a prima facie case. This court has applied the *McDonnell Douglas* formulation to cases charging age discrimination. *See McCorstin v. United States Steel Corp.*, 621 F.2d 749, 752–54 (5th Cir. 1980); *Price v. Maryland Casualty Co.*, 561 F.2d 609, 612 (5th Cir. 1977); *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 735 (5th Cir. 1977). A prima facie case of age discrimination is established if a plaintiff proves: (1) his membership in the protected class, (2) his discharge, (3) his qualifications for the job, and (4) his replacement by a person outside the protected group. *Price v. Maryland Casualty Co., supra.* In the context of a reduction in force by which the subject job is eliminated, a plaintiff need not show he was replaced by a person outside the protected class. *McCuen v. Home Insurance Co.*, 633 F.2d 1150, 1151 (5th Cir. 1981); *McCorstin v. United States Steel Corp.*, 621 F.2d at 754.

If an ADEA plaintiff succeeds in proving his prima facie case, the employer must adduce proof that the plaintiff was discharged for good cause or because of some reasonable factor other than age. 29 U.S.C. § 623(f); *Marshall v. Westinghouse Electric Corp.*, 576 F.2d 588, 590–92 (5th Cir. 1978); *Bittar v. Air Canada*, 512 F.2d 582, 582–83 (5th Cir. 1975). However, only the burden of producing evidence shifts to the employer. After the defendant goes forward with evidence that the discharge was based on some reason other than age, the plaintiff still bears the burden of persuasion to establish a case of discrimination by a preponderance of the evidence. *Bittar v. Air Canada, supra.*

In the context of Title VII litigation, this circuit had held that once the plaintiff has established a prima facie case of discrimination, the burden is on the employer to rebut this showing by a preponderance of the evidence. *See, e. g., Ray v. Freeman*, 626 F.2d 439, 443 (5th Cir. 1980). In *Texas Department of Community Affairs v. Burdine*, —— U.S. ——, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the Supreme Court rejected this interpretation. It held that the employer's burden of articulating some legitimate, nondiscriminatory reason for the employment decision is met by producing evidence that the plaintiff was rejected or another was selected for a nondiscriminatory reason. Such evidence is sufficient to carry the employer's burden if it "raises a genuine issue of fact as to whether [the defendant] discriminated against the plaintiff." *Id.* at ——, 101 S.Ct. at 1094, 67 L.Ed.2d at 216.

The holding in *Burdine* does not affect this circuit's interpretation of the *McDonnell Douglas* allocation of burdens of proof in the context of ADEA litigation. Prior to *Burdine* we had recognized that age discrimination is qualitatively different from race or gender discrimination and that the burden of rebutting an ADEA plaintiff's prima facie case requires no more than producing evidence that the employment decision was based upon reasonable factors other than age. *See, e. g., Marshall v. Westinghouse Electric Corp.*, 576 F.2d 588, 591–92 (5th Cir. 1978); *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 736 (5th Cir. 1977). Thus, like the Title VII employer, the ADEA defendant must respond to a prima facie case by going forward with evidence, not by carrying the burden of persuasion.

■ If the employer charged with violating the ADEA offers proof sufficient to raise a genuine issue of fact that he discharged the plaintiff for good cause or for some reason other than age, the plaintiff must then prove that the legitimate reasons proffered for his discharge were not the employer's true reasons but merely a pretext for age discrimination. *Carter v. Maloney Trucking & Storage*, 631 F.2d 40, 42 (5th Cir. 1980).

However, an analysis of the evidence under the *McDonnell Douglas* allocation of burdens of proof is unnecessary in a case such as the one at bar where both parties have been allowed to put on all their evidence. The *McDonnell Douglas* burden-shifting analysis is intended to apply to cases where a litigant's rights are affected by the state of the record at some stage short of full proof. In a full proof case, the ultimate issue of fact is always whether the plaintiff was intentionally discriminated against contrary to ADEA. The burden of persuading the trier of fact on this issue remains at all times with the plaintiff. When the court has allowed both parties to develop their full proof, the analysis of the evidence should look to whether plaintiff · has met the ultimate burden of persuading the trier of fact that he has been the victim of intentional discrimination. *Cf. Texas Department of Community Affairs v. Burdine*, —— U.S. ——, ——, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207, 217 (1981) (Title VII). In such a case, neither the trial court nor this court need parse the evidence in accordance with the ebb and flow of shifting burdens.

### III.

■ The district court's determination of whether unlawful discrimination has occurred is a conclusion of ultimate fact. *Danner v. United States Civil Service Commission*, 635 F.2d 427, 430 (5th Cir. 1981); *Thompson v. Leland Police Dept.*, 633 F.2d 1111, 1112 (5th Cir. 1980). The ordinarily

applied clearly erroneous standard[2] does not apply to such determinations of ultimate fact. Rather, the reviewing court must make an independent assessment of the allegations of discrimination, guided by the district court's determination of subsidiary facts which are not themselves clearly erroneous. *Thompson v. Leland Police Dept., supra; Causey v. Ford Motor Co.*, 516 F.2d 416, 421 (5th Cir. 1975).

■ An examination of the record in light of these principles discloses that the district court's ultimate finding that Smith was not discriminated against because of his age is amply supported by subsidiary facts that are not clearly erroneous. Farah's senior vice president and chief financial officer helped formulate the plan that saved the company from its financial plight. At trial, he explained how the personnel reorganization was accomplished. Farah first decided which job functions could be concentrated in one position. It then determined which person in the company was most capable of performing the combined responsibilities. On the basis of Dow's qualifications, Farah selected him to head the reorganized transportation, machine shop, and building maintenance sections. Dow had been the machine shop supervisor before the reorganization and was competent to work with all the equipment in the shop. He also had a basic knowledge of plumbing and electrical work necessary to supervise the building maintenance department and a basic knowledge of automotive repair necessary to supervise the transportation department. Moreover, he already had responsibility over the largest of the three departments. As supervisor of the combined sections, he had charge of 26 persons in the machine shop, 8 in building maintenance, and 6 in transportation.

Smith did not have the requisite skills to take charge of the combined responsibilities. Smith himself conceded that he was not qualified to supervise either the machine shop or the building maintenance de-

2. Fed.R.Civ.P. 52(a); *Wilson v. Thompson*, 638 F.2d 799, 801 (5th Cir. 1981); *Fitzgerald v. Peek*, 636 F.2d 943 (5th Cir. 1981).

partment. During cross-examination, Smith admitted that he was largely unfamiliar with the equipment and skills needed in each of the other two sections of the company. Then, the following two exchanges took place:

Q. There would be no way that you could personally supervise or run the machine shop, is there?

A. No, there is not. [I could not] do an efficient job of running the machine shop.

. . . .

Q. You couldn't perform the functions that are required by the maintenance department at the Farah Manufacturing Company?

A. That, I could do, but—I know enough about it to tell a man that is a plumber what I want done, but it's not like a machine shop. It would be far more simple to do that than it would be to run the machine shop. I don't think I could do it. I really don't think I could do an efficient job of running a maintenance crew. No.

Accepting, as we must, the district court's express subsidiary finding that Farah selected Dow instead of Smith based on qualification for the new job which was created because of economic necessity, we are bound to find that the district court correctly decided that Smith's age was not the reason for his discharge.

Smith attacks the trial court's ultimate finding on two fronts. First, he contends that the district court erred when it found that Farah placed Dow in charge of the transportation duties which Smith had performed before he was laid off. To support that claim, he points to evidence that Reynaldo Parada, Smith's former assistant, had assumed the supervisory responsibilities in the transportation department. Second, Smith argues that the district court overlooked important facts. He points to evidence that Farah employs very few persons over fifty years old and that only a few of its salaried employees have retired at age 65.

Neither of these contentions, however, compels a conclusion different from that reached by the district court. Smith's claim that Dow was supervisor of transportation in name only and that Parada was supervisor in fact is not borne out by the record. In May, 1978, when Smith was discharged, Parada was an hourly employee making about $5.00 an hour. In January, 1980, eighteen months later, Farah promoted Parada to a management level position at a salary of about $1300 a month. Although the record suggests that Parada now has assumed supervision of the automotive mechanics in the transportation department, it also indicates that Dow has remained in charge of purchasing responsibilities and that he still supervises the truck drivers. Thus, at most, Parada has assumed only a portion of Smith's former duties.

Furthermore, Parada's promotion eighteen months after Smith's discharge has only limited probative value. It certainly does not demonstrate that the district court was clearly erroneous when it accepted the very persuasive evidence concerning the actual basis for Farah's preferring Dow over Smith. When Smith was laid off and Gilchrist resigned, Dow did in fact take charge of all their duties. It was not until eighteen months later that Parada assumed some of Smith's former duties. This subsequent event does not even suggest much less compel a finding that Farah's selection of Dow was a pretext for age discrimination. The district court's finding that Dow replaced Smith is not clearly erroneous.

Smith's evidence of the paucity of older employees and that salaried employees seldom retire upon reaching age 65 is no more persuasive. He notes that since 1954 only five of Farah's salaried employees have retired at the normal retirement age of 65 and that one of those is Hana Farah, mother of the company's president and one of its founders. Smith also observes that only 12 out of 160 salaried employees are 50 years old or older. He asserts this evidence demonstrates that age discrimination is a way of life at Farah Manufacturing Company. Even if Smith's proof were to be accepted as showing that age discrimination per-

vades Farah's employment practices, it nevertheless fails to overcome the accepted fact that he was not a victim of that discrimination. Because the record as a whole supports the district court's ultimate conclusion that Farah discharged Smith for reasons other than his age, we

AFFIRM.