Richard R. REEVES, Plaintiff-Appellee,

v.

GENERAL FOODS CORPORATION, Defendant-Appellant.

No. 81–2359.

United States Court of Appeals, Fifth Circuit.

Aug. 13, 1982.

Rehearing Denied Sept. 29, 1982.

---

Thompson & Knight, William T. Hankinson, Stephen F. Fink, Dallas, Tex., for defendant-appellant.

Daves, McCabe & Crews, Larry R. Daves, Ellen Hahn, Tyler, Tex., for plaintiff-appellee.

Before BROWN and RANDALL, Circuit Judges, and DUPLANTIER,[*] District Judge.

RANDALL, Circuit Judge:

Defendant-Appellant General Foods Corporation appeals from a jury award of damages and attorney's fees based on a finding that it had discriminated against Plaintiff-Appellee Richard R. Reeves because of his age. The sole question presented for review is whether there was substantial evidence of intentional, age-based discrimination to support the jury's verdict. We find there was substantial evidence and affirm the verdict.

## I. Facts and Procedural History

Richard Reeves was employed as a sales representative by the Maxwell House Division of General Foods in 1962, calling on grocery stores and wholesale businesses to sell coffee. In 1968 he was promoted to the position of account manager. During his tenure with General Foods, he worked in Oklahoma, Washington D.C. and Texas. He was supervised by an assistant territory manager, a territory manager and a district manager.

From the time of his employment in 1962 until 1976, Reeves received satisfactory job performance ratings.[1] In April, 1976, however, Reeves was personally reviewed by district manager Andy Anderson who, in a memorandum, noted deficiencies in Reeves' performance.[2] Anderson concluded the memorandum by asking territory manager John Biltgen to keep him posted on Reeves' performance. Reeves continued to be employed by General Foods, although, according to his supervisors, problems continued. In August, 1976, a conference was held with Reeves, Anderson, Tom O'Quinn, assistant territory manager, and Ray Kostick, regional sales manager. As a result of that meeting, Reeves was warned that he faced discharge if his performance did not improve. He was given a partial performance rating of "F" (fair), although a total performance rating was not completed. At Reeves' next appraisal in December, 1976, he received a "good plus" rating. In addition, on January 10, 1977, he was recommended for a pay increase to $22,300 from his current salary of $19,800. In February, 1977, however, Reeves' supervisors again complained of employment deficiencies. Biltgen, in a memorandum, noted alleged performance deterioration. Anderson subsequently

---

[*] District Judge of the Eastern District of Louisiana sitting by designation.

1. The five possible ratings were: "E" (excellent), "VG" (very good), "G" (good), "F" (fair), and "U" (unsatisfactory).

2. The problems identified included insufficient space for General Foods' products on store shelves, incorrect prices on General Foods' products, the absence of certain new General Foods' products in certain stores, failure to rotate the inventory of General Foods' products on the shelves, failure to identify and eliminate certain discontinued General Foods' products from the shelves, and very few displays of special deals on General Foods' products.

asked several supervisors to follow Reeves in his day-to-day activity and, on May 24, 1977, Anderson personally followed Reeves[3] as he called on various accounts.[4] Anderson and Reeves then discussed the observations of the supervisors in which the deficiencies were noted.[5] At the conclusion of the discussion Anderson discharged Reeves. Reeves was forty-six years of age at the time of the discharge.

During the time of the written and oral criticism noted above, Reeves also received oral and written praise for various aspects of his work and his sales volume remained consistently high.

Reeves filed suit in federal district court alleging that General Foods terminated him because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* A jury trial was held. By its answers to specific interrogatories, the jury found that General Foods had willfully terminated Reeves because of his age. General Foods moved for judgment notwithstanding the verdict or, in

the alternative, for a new trial. The district court denied both motions. General Foods appeals, alleging that Reeves did not produce sufficient evidence of intentional age-based discrimination to support the jury's verdict.

## II. Sufficiency of the Evidence

### A. Standards of Review

Since General Foods moved both for a judgment notwithstanding the verdict and for a new trial, we must first establish the appropriate standards of review for each motion.

The standard of review of a denial of a judgment notwithstanding the verdict was set forth in *Boeing v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (en banc), and recently articulated in the context of an age discrimination verdict.

This court, in *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (en banc), set forth the standard by which to judge the propriety of a judgment notwithstanding the verdict:

---

3. Anderson testified that Reeves did not leave home until 10:35 a. m. when he was supposed to be at his first account by 8:30 a. m. When he arrived at various stores he stayed only four to five minutes in one, ten minutes in another, and twelve minutes in the third. He did not carry his sales equipment with him into either store, a violation of the account manager's procedures and job requirements. Anderson went into several stores that Reeves was supposed to have worked that day. He found no evidence of anything being done by Reeves. He found incorrect prices in some stores and the absence of certain new products on the shelves in other stores.

4. Reeves testified that during May 16–20 and May 23–27 of 1977, the weeks he was being followed, he had been directed by Tom Norton, his new supervisor, to take extra administrative time to complete some administrative reports and to conduct a "soluble blitz" at retail stores, which would require him to spend less than the normal amount of time on each retail call. Anderson, according to Reeves, was aware that Norton had instructed Reeves to spend extra time performing administrative work at home, and on May 20, issued a contradictory instruction to all personnel. However, faced with a choice of disobeying either Anderson or Norton, his immediate supervisor, Reeves followed the instructions given by Norton.

5. Anderson's version of the discussion was summarized in General Foods' brief on appeal as follows:

Anderson testified that he confronted Reeves with the results of his observations. Anderson asked Reeves at what time he arrived at his retail stores. Reeves said he arrived by 8:30 a. m. except when he took administrative time, which should be no more than one quarter day per week. That was contrary to Anderson's observations and the observations of the other supervisors. Moreover, Reeves had already taken his allotted administrative time for that period. Reeves said he left the retail stores around 5:30 to 6:30 p. m. each day, but the other supervisors had observed him arriving home earlier than that. Anderson asked Reeves if he always carried his sales equipment with him, and Reeves replied "always." That was contrary to Anderson's personal observations. Reeves told Anderson he left home at 9:00 to 9:30 a. m. on May 24, 1977. In fact, he left home at 10:35 a. m.

According to Reeves' version of the discussion, he had answered Anderson's questions truthfully. However, because he realized that Anderson would not accept his explanation, and because he knew Anderson had already decided to fire him, he did not make a full response to Anderson's questions.

The Court should consider all of the evidence—not just that evidence which supports the nonmover's case—but in a light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that *the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper.* On the other hand, *if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.* A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, *it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences and determine the credibility of witnesses.*

*Id.* at 374–75. This standard applies as well in our review of the trial court's

granting of a judgment n.o.v. *Maxey v. Freightliner Corp.*, 623 F.2d 395, 397 (5th Cir. 1980).

*Houser v. Sears, Roebuck & Co.*, 627 F.2d 756, 757 (5th Cir. 1980) (emphasis added).

▮ A district court's denial of a new trial is reviewed under a different standard and may not be disturbed by this court "absent a clear showing of abuse of discretion." *Valley View Cattle Co. v. Iowa Beef Processors, Inc.*, 548 F.2d 1219, 1220 n.2 (5th Cir. 1977).[6]

In *Massey [v. Gulf Oil Corp.*, 507 F.2d 92, 94–95 (5th Cir. 1975)]* we stated:

"[T]he operative factors underlying review of a ruling on a new trial motion are deference to the trial judge, who has had the opportunity to observe the witnesses and to consider the evidence in the context of a living trial rather than upon a cold record, deference to the jury's determination of weight of the evidence and quantum of damages, and the constitutional allocation to juries of questions of fact. . . . [W]here the judge denies the motion and leaves undisturbed the jury's determination, all factors press in the direction of leaving the trial judge's ruling undisturbed. . . ."

508 F.2d at 94–95.

*Id.* at 1220–21 n.2.

Thus we must review the jury verdict to determine whether there was substantial evidence, evidence of such quality that rea-

---

**6.** General Foods states that a new trial may be granted if the jury's verdict is against the great weight of the evidence, *Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360 (5th Cir. 1980), and that although it is for the jury to determine where the preponderance of the evidence lies, *id.*, at 636, the court may set aside a verdict and grant a new trial if the verdict is against the clear weight of the evidence, despite the presence of substantial evidence which would prevent a judgment n.o.v. or a directed verdict. *See United States v. Bucon Construction Co.*, 430 F.2d 420, 423 (5th Cir. 1970). While this is a correct statement of the law as it applies to the ability of a *district court judge* to *grant* a new trial, it is not a correct statement of the reviewing court's analysis of a district court's *denial* of a motion for a new trial. As we have recently explained:

Where the trial judge has denied the motion and left the decision of the jury undisturbed, this circuit has shown even greater deference to the trial judge's discretion. *Evers v. Equifax, Inc.*, 650 F.2d 793 (5th Cir. 1981); *Conway, supra; Valley View Cattle Co. v. Iowa Beef Processors*, 548 F.2d 1219 (5th Cir.), *cert. denied*, 434 U.S. 855, 98 S.Ct. 174, 54 L.Ed.2d 126 (1977); *Massey v. Gulf Oil Corp.*, 508 F.2d 92 (5th Cir.), *cert. denied*, 423 U.S. 838, 96 S.Ct. 67, 46 L.Ed.2d 57 (1975).

*Franks v. Associated Air Center, Inc.*, 663 F.2d 583, 586 (5th Cir. 1981).

While the district court may have had the *power* to grant a new trial, the fact that it did not do so is not necessarily a ground for reversal, as long as there was no abuse of discretion in its decision.

sonable and fair-minded men might reach different conclusions and whether the district court abused its discretion in the denial of the motion for a new trial. Additionally, because our review occurs in an age discrimination case, we must first examine what special effect, if any, initial proof of a prima facie case had, after articulation of non-discriminatory reasons for the discharge, on the determination whether substantial evidence existed which justified sending the case to the jury.

### B. The Prima Facie Case, Presumption or Inference of Discrimination?

In *McDonnell-Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the United States Supreme Court set forth one common order of proof occurring in a suit brought under Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e et seq.

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a *prima facie case* of racial discrimination.
>
> . . . .
>
> The burden then must shift to the employer to articulate some legitimate, non-discriminatory reason for the employee's rejection. . . . [Plaintiff] must then be afforded a fair opportunity to demonstrate that [the employer's] assigned reason for refusing to re-employ was a pretext. . . .

*Id.* at 802–803, 805, 93 S.Ct. at 1824 (emphasis added).

■ This court has held that the *McDonnell-Douglas* elements of a prima facie case "constitute a prima facie ADEA case[7] as well." *Marshall v. Goodyear Tire and Rubber Co.*, 554 F.2d 730 (5th Cir. 1977). *Accord, Williams v. General Motors Corp.*, 656 F.2d 120, 127 (5th Cir. 1981). We have further articulated the effect of proof of these elements: "The phrase [prima facie]

simply refers to evidence sufficient for a finding in plaintiff's favor unless rebutted. *United States v. Wiggins*, 39 U.S. (14 Pet.) 334, 347, 10 L.Ed. 481, 488 (1840)." *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d at 735.

This articulation of the effect of the prima facie case gave rise to two questions concerning the evidentiary posture of a discrimination trial. The first question was whether, upon a plaintiff's proof of a prima facie case, the burden of persuasion shifted to the defendant to prove legitimate nondiscriminatory reasons for the employment action or whether only the burden of production of evidence sufficient to raise a fact question on that issue shifted to the defendant.

■ The Supreme Court answered this question in the context of a Title VII case:

> The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The *defendant need not persuade* the court that it was actually motivated by the proffered reasons. See [*Board of Trustees of Keene State College v.*] *Sweeney, supra*, [439 U.S.] at [24] 25, 99 S.Ct. [295] at 296 [58 L.Ed.2d 216]. *It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.* To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant.

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981) (emphasis added).[8] This court has applied the *Burdine*

---

7. Those elements are, according to Reeves: he was in the protected age group, he was qualified to do the job, he was discharged and he was replaced by a younger worker.

8. At least one commentator has suggested that the burden that devolves upon the defendant is, after *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), still unclear. Belton, *Burden of Pleading and Proof in Discrimination*

burden shifting in suits brought under the ADEA. *Smith v. Farah Manufacturing Co., Inc.,* 650 F.2d 64, 67 (5th Cir. 1981) ("Like the Title VII employer, the ADEA defendant must respond to a prima facie case by going forward with evidence, not by carrying the burden of persuasion.").

A second question flows from the Supreme Court's decisions concerning the nature of the burden which devolves upon the defendant and is the question which concerns us today. What special effect, if any, does the existence of a prima facie case (with its concommitant quantum of evidence) have upon a determination, after a defendant has produced evidence of nondiscriminatory reasons, whether there exists substantial evidence to support a jury verdict? That is, is the evidence introduced to establish the prima facie case always substantial enough to raise an inference of discrimination and require submission of the case to the jury?

Reeves asserts that evidence sufficient to prove the elements of a prima facie case raises an "inference" of intentional discrimination and that, because a jury may find wholly incredible the defendant's articulated reasons for the discharge, this evidence sufficient to establish the prima facie case is necessarily substantial enough to require sending the case to the jury and refusing a directed verdict or judgment n.o.v. General Foods claims that evidence sufficient to prove the prima facie case is not, after rebuttal, necessarily the equivalent of substantial evidence from which a jury could infer intentional discrimination. It asserts that, in order for there to be even an inference of discrimination which would justify sending the case to the jury, Reeves was required to introduce "substantial evidence" of General Foods' intent to discriminate on the basis of age, not just evidence of the

elements of the prima facie case (age, qualification, discharge, replacement). General Foods, of course, argues that there was no such substantial evidence. We agree with General Foods' legal argument but disagree that there was not substantial evidence of intent upon which the jury's verdict could be sustained.

▮ A careful review of *Burdine* as it adopted traditional common law rules of evidence, 450 U.S. at 255 n.8, 101 S.Ct. at 1094 n.8, indicates that evidence sufficient to establish a prima facie case creates only a legally mandatory "rebuttable presumption." *Burdine, supra,* at 254 n.7, 101 S.Ct. at 1094 n.7. ("A presumption, generally defined, is a rule of law that deals with the assumption—at least temporarily—of a certain factual situation based upon proof of other usually logically related facts." Belton, *Burdens of Pleading and Proof in Discrimination Cases: Toward a Theory of Procedural Justice,* 34 Vanderbilt Law Review 1205, 1222 (1981).) If the defendant carries the burden of production of nondiscriminatory reasons for the discharge, this presumption "drops from the case." *Burdine, supra,* at 255 n.10, 101 S.Ct. at 1095 n.10 (Although the trier of fact may consider evidence previously introduced by plaintiff to establish the prima facie case in its drawing of inferences, *"a satisfactory explanation by the defendant destroys the [presumption] of discrimination arising from the plaintiff's initial evidence."* (emphasis added)). Moreover, the quantum of evidence which gives rise to the rebuttable presumption (and which would require a directed verdict for the plaintiff in the absence of rebuttal) is not *necessarily* sufficient to satisfy "the plaintiff's burden [absent the presumption] of producing enough evidence to permit the trier of fact to infer the fact at issue." *Id.*[9] The initial evidence

---

*Cases: Toward a Theory of Procedural Justice,* 34 Vanderbilt L.Rev. 1205, 1209 (1981) (Burdine fails to achieve clarification of the confusion generated by the Court's earlier cases.). A careful review of *Burdine,* however, seems to indicate that the burden that devolves on the defendant is that of production of evidence, not persuasion. See text, pp. 520–522, *infra.*

**9.** Presumptions [should not] be confused with permissive inferences. The latter are merely conclusions that can be rationally drawn from any given set of evidence. *See, e.g.,* Cal.Evid.Code § 600(a)–(b) (West 1966). In determining the facts of a case, the trier of fact must accept some possible inferences and reject others. Whether or not the trier

introduced to support the prima facie case may or may not be adequate, after the presumption has disappeared, for a jury to draw a permissible inference of intentional discrimination. *Id.*[10] After the defendant has articulated a legitimate reason for the discharge, the evidence initially introduced is simply to be evaluated as is evidence in any other case where intentional discrimination must be proved.[11] The fact that the

---

10. of fact draws a particular inference depends on its assessment of all the evidence—including the credibility of the witnesses—bearing on the issue of fact to be decided. A presumption, on the other hand, is a rule of law which compels the decisionmaker to draw a certain inference from a specified set of facts for a specified purpose, which may be something other than the final determination of facts. *See generally* D. Louisell & C. Mueller, Federal Evidence § 67 (1977); text. accompanying notes 74–86 *infra.*
Mendez, *Presumptions of Discriminatory Motive in Title VII Disparate Treatment Cases,* 32 Stanford L.Rev. 1129, 1141 n.67 (1980).
"The ambiguities [relating to whether the prima facie case creates an "inference" or "presumption"] which remain after *Furnco [Construction Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978) ] and *[Board of Trustees v.] Sweeney* [439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978) (per curiam) ] stem from the Court's use of such terms as 'burden,' 'prove,' 'infer' and 'articulate.' " Mendez, *Presumption of Discriminatory Motive in Title VII Disparate Treatment Cases, supra* at 1145. In *Furnco* the Court stated that "[a] prima facie case under *McDonnell-Douglas* raises an inference of discrimination not only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors...." 438 U.S. at 577, 98 S.Ct. at 2949. After *Burdine* there is no doubt that a Title VII prima facie case creates a "rebuttable presumption," not a permissible "inference" of an issue of fact which takes a case to the jury.

10. This description of the order of evidentiary burdens and the effect of the presumption is simply a restatement of "a traditional feature of the common law." *Texas Department of Community Affairs v. Burdine,* 450 U.S. at 255 n.8, 101 S.Ct. at 1094 n.8.
[A] presumption merely shifts to the opposing party the burden of producing evidence to rebut the fact to be presumed. If the opposing party produces sufficient evidence to persuade the court of the nonexistence of the presumed fact, then the presumed fact is ignored. The party whose case depends on the existence of the presumed fact retains the risk of nonpersuasion on its existence and in his rebuttal may offer additional evidence to persuade the trier of fact to find the presumed fact *just as it would any other fact in the case.* (footnotes omitted)
Mendez, *Presumptions of Discriminatory Motive in Title VII Disparate Treatment Cases, supra* at 1145 (emphasis added).

This view of the shifting of the burden of production was articulated by Professor Thayer, and described as
the "bursting bubble" because the presumption is supposed to have no effect once the opposing party produces sufficient evidence to warrant a finding of the nonexistence of the presumed fact. *The trier of fact could still draw a logical inference from the evidence in the prima facie case underlying a Thayer presumption, but no rule of law or special jury instruction would aid in drawing that inference.*
*Id.* at 1145–46 (emphasis added).
The other view, that "a presumption should shift to the opposing party the risk of nonpersuasion on the nonexistence of the presumed fact, as well as the burden of producing evidence of its nonexistence", *id.,* was espoused by Professor Morgan and was rejected by the Supreme Court, at least insofar as a Title VII case is concerned, in *Burdine, supra,* although at least one commentator has suggested that the defendant, after *Burdine,* may continue to assume the burden of persuasion. See note 8, *supra.*
Thayer's approach to the effect of the presumption was adopted in Fed.R.Evid. 301:
In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.
*See also* 10 Moore's Federal Practice § 301.02 (2d ed. 1976).

11. Reeves claims that this court has held that the presumption occasioned by proof of the elements of the prima facie case, even if rebutted, is sufficient to create an "inference" raising an issue of fact if the jury disbelieves the defendant's articulated reasons. Reeves relies on this court's decision in *Haring v. CPC Intern, Inc.,* 664 F.2d 1234 (5th Cir. 1981), for that proposition.
In *Haring* we were examining the correctness of a jury instruction. The jury instruction at issue stated in relevant part:
If a prima facie case is established by the plaintiff, the jury may infer that the employment decision to terminate was probably based upon the impermissible factor of age.

prima facie case *once* existed is no longer of special benefit to the plaintiff. The "presumption" has disappeared; the quantum of evidence had never, simply because it was sufficient to prove a prima facie case, been deemed sufficient to raise an "inference" of intentional discrimination.

We have detailed this analysis in order to sharpen the focus of our review of the evidence in this case. We now conduct that review.

### C. Sufficiency of the Evidence

■ Reeves admits on appeal that General Foods articulated legitimate, nondiscriminatory reasons (poor performance) for his discharge that satisfied its *Burdine* burden of going forward with evidence. General Foods argues that, in the face of these articulated reasons, Reeves did not establish evidence of intentional age-based discrimination. Reeves, in answer, argues that he presented evidence that his performance was such that the jury could have decided that General Foods' admittedly articulated

explanation of poor performance was unworthy of credence. We agree. The evidence was sufficient for a jury finding of lack of credibility as to the testimony offered by General Foods. Reeves then asserts that if the jury found General Foods' evidence wholly unworthy of credence, he was entitled to rely solely on his proof of the four elements of the prima facie case (three of which General Foods stipulated) as being substantial evidence from which the jury could infer discrimination without proof of intentional age-based discrimination. As noted in Part IIB, *supra*, with that proposition we disagree. Because General Foods articulated legitimate reasons for his discharge, any presumption of age-based discrimination (and that was all that resulted from the prima facie case) as a basis for our sustaining the jury's verdict disappeared. It was incumbent upon Reeves to introduce substantial evidence to show that General Foods' articulated reasons were pretextual and that he had been discriminated against *because of age*.[12] We now

I say that the jury may infer such, not that it must infer such, this being a matter solely for you to determine. Nothing said by counsel, the court, or any witness should be construed by you as requiring you to draw any such inference.

The defendant in *Haring*, referring to note seven of *Burdine* (450 U.S. 254, n.7, 101 S.Ct. 1094, n.7), claimed that the district court's charge as to the effect of the prima facie case (before there was even any rebuttal by the defendant) was error. We held that the district court's description of the effect of the prima facie case was not error. While we did not correct the district court's use of the term "infer," it is clear from our reliance on *Burdine* that we were holding, as did *Burdine*, that an *unrebutted* prima facie case gives rise to a *presumption* and a finding of discrimination. *Haring* did not hold that, after articulation of a nondiscriminatory reason by the defendant, the prima facie case was necessarily equivalent to an inference sufficient to take the case to the jury.

12. The district court here clearly and concisely explained the law to the jury:

The parties to this case have stipulated that on the occasion in question, Plaintiff was between the ages of forty and seventy, the Plaintiff was terminated, and that he was replaced by a younger person outside the age group protected by the Act. Therefore, in order for Plaintiff to prevail in his age dis-

crimination claim, he must prove each of the following elements by a preponderance of the evidence:

First: That he was qualified to do the job; and

Second: That the Defendant's reasons offered for terminating Plaintiff was [sic] a pretext for age discrimination.

In order to find that Defendant's reasons offered for termination of the Plaintiff were a "pretext" for age discrimination, you must find that the real reason for the termination of Plaintiff was because of age and that the reasons offered by Defendant for termination of the Plaintiff were, in fact, a cover-up for age discrimination.

You are further instructed that in order to prove Plaintiff was terminated because of age, he must show that his age was a determinative factor in prompting Defendant to terminate him.

You are further instructed that even if the reasons offered by Defendant for terminating Plaintiff may seem poor or erroneous to you, and even if the reason is not one that you would act on or approve of, you cannot find in favor of the Plaintiff unless you are persuaded that the Plaintiff has proved by a preponderance of the evidence that the reasons offered by the Defendant was [sic] a pretext for what was in truth age discrimination.

review the evidence to determine if he met that burden.

As we noted above, there was sufficient evidence from which the jury could have inferred that General Foods was not articulating its true reasons for Reeves' discharge. At the least, contradictory stories emerged. Representatives of General Foods testified that Reeves' performance justified his termination. Reeves presented evidence that only months prior to his termination he had received a good evaluation and a recommendation for a significant salary increase. The only customers to testify about his performance considered it good. During the period of time that Reeves received criticism he also received several *memoranda praising him for good job performance* in many different areas. Additionally, a representative of one of his competitors testified that Reeves was competent in his work. This evidence was sufficient to raise a question of fact as to Reeves' competence. General Foods' assertion of Reeves' incompetence could thus have been wholly disbelieved by the jury. That credibility determination was solely within its province. *Houser v. Sears Roebuck & Co.*, 627 F.2d at 657.

Because there was sufficient evidence from which the jury could infer that General Foods' articulated reasons were not the real reasons for the discharge, the final and most important question is whether Reeves introduced substantial credible evidence upon which reasonable minds could reach differing conclusions as to whether General Foods' real reason for the discharge was based on Reeves' age.

■ Reeves points to the following evidence as probative of age discrimination, stating first the evidence which was sufficient to establish his prima facie case: he was over forty, he was qualified to do the job, he was discharged and he was replaced by a younger worker (Bill Hill, age twenty-eight).[13]

Reeves, however, also offered additional evidence intended to support his claim that General Foods discriminated because of age: The compensation program of General Foods tended to discriminate against older workers. Don Smith, a similarly situated older worker, had been forced to resign under similar circumstances. Bill Hill, the younger employee who replaced Reeves, was hired on at a salary considerably less than Reeves would have been entitled to as of May 31, 1977, thus saving General Foods money. Reeves was discharged four days before his salary raise was to be effective. Younger workers were treated differently than workers over forty, as evidenced by the fact that Bill Hill was given a raise shortly after he assumed Reeves' job, even though his performance, at least in the eyes of some of Reeves' customers, was not equal to Reeves.[14] Reeves also introduced some comparative data to show that older workers had been discharged in disproportion to their numbers in the General Foods Dallas division. From January 1, 1976, to November 21, 1980, thirty-three employees left the Dallas division of General Foods; four of

---

In this regard, an employer such as General Foods is entitled under the law to discharge an employee for no reason, or for any nondiscriminatory reason at all, such as a lack of loyalty, responsibility, dependability, or for failure of the employee to make a full and complete effort to the best of his ability to perform his job duties, so long as age is not a determinative factor in the decision to terminate the Plaintiff.

13. Reeves, as noted above, states that this evidence alone may be sufficient to support the jury verdict as he relies on the presumption (which he refers to as an inference) occasioned by his proof of a prima facie case. The presumption, however, had dropped from the case

and the jury was correctly *not* instructed on its existence. As stated in Part IIB, *supra,* we simply look at all the evidence before us without special presumptive effect given any quantum of evidence.

14. Kenneth Attaway, co-owner of Jim Joy Fine Foods and a customer of Reeves and Hill stated, when asked to compare Reeves and Hill:

Q. Okay. How does Mr. Reeves' job performance compare with the other Representatives that serviced this store?
A. You mean with Bill Hill?
Q. Yes.
A. I'd say probably better. I would see Mr. Reeves more often than we see Hill.

them because of terminations based on "inability to adjust." Three of those terminated were over forty—only one was under forty. Of what General Foods refers to as "Termination or Requested Resignations" from January 1, 1976 to November 21, 1980, three of seven were of employees over forty. Furthermore, during the period of time from 1976–1980, the number of employees in the 20–39 age bracket and the 40–69 age bracket changed as follows:

| 20 – 39 | 40 – 69 |
|---|---|
| 1976 – 13 | 1976 – 18 |
| 1977 – 15 | 1977 – 16 |
| 1978 – 18 | 1978 – 13 |
| 1979 – 18 | 1979 – 13 |
| 1980 – 22 | 1980 – 10 |

Finally, Reeves testified that he heard Anderson and Kostick say they would have to offer "Smith a package to get him out." Reeves claims that, from this evidence, the jury could have inferred that his age was a determinative factor in General Foods' decision to discharge him.

General Foods claims that Reeves did not introduce substantial evidence that his performance was adequate and that, even if he did, there was no evidence that General Foods' reasons, if pretextual, were a pretext for age discrimination. It claims that the "self-evaluation" of his performance was worthless. If there had only been a self-evaluation by Reeves, we might agree. However, there was a G+ written evaluation, a recommendation for a pay raise, complimentary memoranda and favorable testimony from customers. The jury was justified in inferring that poor performance was not the real reason for the discharge.

General Foods challenges Reeves' data that its compensation plan might have discriminated against older employees.[15] While this evidence, by itself, was inconclusive, it was at least probative on that issue. Standing alone, the evidence was clearly insufficient, but in combination with the other evidence introduced by Reeves, the jury could have inferred age discrimination.

General Foods also challenges the comparative data on employee age and termination introduced by Reeves as consisting of too small a sample, citing *Turner v. Texas Instruments, Inc.*, 555 F.2d 1251, 1255 (5th Cir. 1977) (sample of eight employees too small to have probative significance). Here, the sample was not of eight, but of 31 or 32 employees over a four year period. It was probative on the issue of intent. We do not draw our own conclusions about the data; we ask only if the jury, from the evidence before it, could have drawn the conclusion it did. We find this comparative evidence, in combination with other evidence, sufficiently substantial to support the jury's verdict.

General Foods further maintains that Reeves was earning a salary of $19,800 which was less than the other account managers earned and that he was not a highly paid older employee who General Foods would wish to dismiss. This argument ignores the fact that his salary was to be significantly increased four days after his discharge. The "timing" of this discharge in combination with Reeves' expert testimony that the compensation plan *might* discriminate against older employees could have led to a jury inference of discrimination because of age.

Finally, General Foods argues that Don Smith, the other employee over age forty who testified he was forced to resign, was incompetent. Smith's testimony was not introduced to answer questions relating to his competence but was introduced for the purpose of showing that he, as an older employee, was treated similarly to Reeves. The evidence introduced was probative on that issue and could have bolstered the inference of age discrimination.

In summary, Reeves case seems to fall on the cutting edge of a claim of age discrimination. We, however, are unwilling to disturb the jury's verdict where this quantum

---

**15.** General Foods states that Reeves' expert witness, Dr. Shuford, was unwilling to say for sure that it had discriminated against Reeves. We agree. Dr. Shuford did say however, that the pay plan might discriminate against "older" employees. This statement was probative of possible reasons for General Foods' desire to discharge Reeves.

of evidence of age discrimination has been introduced. We further note that the trial judge exhibited great concern about the amount of evidence in the case, that he noted that the question was a close one, but that, in his judgment, there was sufficient evidence for the jury. His determination that there was substantial evidence for the case to go to the jury was correct. He did not abuse his discretion in denying General Foods' motion for a new trial.

The jury verdict is affirmed.

Appellant shall bear the cost of this appeal.

AFFIRMED.