**Robert M. BARR, Plaintiff,**

v.

**ARCO CHEMICAL COMPANY, A DIVISION OF ATLANTIC RICHFIELD COMPANY, Defendant.**

**Civ. A. No. H–80–198.**

United States District Court,
S.D. Texas,
Houston Division.

May 1, 1984.

See also, D.C., 529 F.Supp. 1275, 1277.

### ORDER

McDONALD, District Judge.

This age discrimination in employment case was tried to the Court on September 8, 9, and 12, 1983. The parties subsequently filed post-trial memoranda and proposed findings of fact and conclusions of law. Now, having thoroughly considered the evidence, the parties' arguments, and the applicable law, the Court enters its Findings of Fact and Conclusions of Law pursuant to Fed.R.Civ.P. 52(a).

### FINDINGS OF FACT

1. Defendant regularly transacts business within the Southern District of Texas and in interstate commerce between numerous states and had so regularly transacted during calendar years 1977 and 1978.

2. Defendant had employed twenty-five or more employees for each working day in each of twenty or more calendar working weeks in 1977, the calendar year preceding the actions complained of by Plaintiff.

3. Plaintiff was born on August 8, 1923.

4. Plaintiff filed a complaint alleging that Defendant had discriminated against him on the basis of age with the United States Department of Labor on September 18, 1978. More than sixty days elapsed between that filing and the date he filed the lawsuit at bar.

5. Defendant's predecessor, Sinclair Refining Company, hired Plaintiff as a sales representative in 1961. Plaintiff became

Defendant's employee as a result of a merger in 1970.

6. Plaintiff's job was based in Atlanta, Georgia, until 1976. That job entailed selling a number of chemical products to several purchasers. Most of these purchasers bought in small lots.

7. During this period Plaintiff falsified one call report; he later admitted that he had recorded having made a call he had in fact not made, and was severely admonished by his superior, Mr. Van Olson.

8. Plaintiff generally performed his job well during his tenure in Atlanta, received pay raises, and was promoted first to Technical Sales Manager and then to Regional Manager of Sales for the Southeastern Region.

9. In 1975, Defendant underwent a corporate reorganization. Plaintiff consequently was transferred to Houston, Texas, to become Regional Manager of the newly-formed Aromatics Group.

10. Plaintiff's immediate superior in this new post was Mr. Dan Brady. Mr. Brady's superior was Mr. Jack Kleiderlein. See the other members of the Aromatics Group were in Philadelphia.

11. Plaintiff's job as Regional Manager of the Aromatics Group was two-faceted. First, he was to sell aromatics to Arco's customers. Second, he was to gather and send to the other members of the Aromatics Group. Mr. Kleiderlein stated that he received only a few call reports containing market intelligence from Plaintiff. However, Plaintiff alleges that he sent numerous call reports during his tenure in Houston, and no job evaluation of Plaintiff indicates that he failed to send these crucial reports.

12. The market for aromatics differed from the market with which Plaintiff had previously dealt. Aromatics are "commodity chemicals," *i.e.,* one producer's chemical is fungible with that of another producer. In addition, only a few companies buy aromatics, and these purchases tend to be in large quantities.

13. Of the five members of the Aromatics Group, only Mr. Kleiderlein had authority to negotiate contracts, adjust prices, or purchase products.

14. Mr. Kleiderlein manifested displeasure with Plaintiff's performance by criticizing, *inter alia,* Plaintiff for getting lost on the way to a call, for failing to make hotel and plane reservations, and allegedly not giving a large customer, Tennessee Eastman, adequate marketing formation regarding foreign trade. The evidence indicates that Plaintiff was given no information regarding foreign trade by Defendant. In addition, Mr. Kleiderlein states that Plaintiff offered to lower a price for one customer, Montrose Chemical. Lowering Montrose's cost could have lowered the cost for many customers with most favored nation clauses in their contracts. However, the Court finds that Plaintiff merely inquired as to the effect of lower price and did not actually offer to lower the price.

15. Not all Arco employees received annual raises; therefore Plaintiff took as a sign of satisfaction with his work that he received fourteen pay increases while at Arco.

16. In 1976, the year before his termination, Plaintiff received a 7% merit pay raise and was told by Mr. Brady that Plaintiff's job performance was fully satisfactory.

17. In October, 1977, Mr. Brady informed Plaintiff that Plaintiff would receive only a 5.5% pay increase due to Mr. Kleiderlein's concerns regarding Plaintiff's organization on the job.

18. In November, 1977, Mr. Kleiderlein met with Plaintiff. At that meeting Mr. Kleiderlein told Plaintiff that Plaintiff was a "glad-hander" who employed "outmoded" sales techniques disfavored by today's "young," "aggressive," and "technically-oriented" salespeople. At the same time, Kleiderlein did not recommend any specific improvements Plaintiff could make to overcome the problems Kleiderlein pointed out. Mr. Kleiderlein also gave Plaintiff a magazine article emphasizing the need for using modern, technically-oriented sales techniques.

19. Plaintiff subsequently received assurances from Mr. Brady that Plaintiff's performance at work was satisfactory, and Mr. Brady placed an evaluation form rating Plaintiff highly in Plaintiff's personnel file.

20. In January, 1978, Mr. Kleiderlein evaluated Plaintiff. Kleiderlein rated Plaintiff's performance as below expectation, but correctable. At trial, Mr. Kleiderlein adjudged Plaintiff to be a lazy worker. However, there is no evidence to suggest that Mr. Kleiderlein told that to Plaintiff before Plaintiff was terminated.

21. In April, 1978, Plaintiff informed the office in Philadelphia that he suspected that Exxon was attempting to procure information regarding Arco's prices from him. Had Exxon obtained information in this manner, a violation of federal antitrust laws might have occurred. Plaintiff did not give Exxon market information.

22. At no time during his tenure at Arco did Plaintiff receive warnings that his job was in danger, counseling as to how he could improve his job performance, or training in the job skills Mr. Kleiderlein asserted Plaintiff lacked.

23. In April, 1978, Mr. Kleiderlein and Mr. Robert Beisecker met with Plaintiff. At that meeting, Mr. Kleiderlein informed Plaintiff that his employment was to be terminated, but declined to explain why. Mr. Beisecker gave Plaintiff the option of immediate termination or early retirement. Plaintiff chose the latter alternative and received an unusually large severance pay.

24. Plaintiff's job was advertised through Arco's Application Placement Service; at the same time, Mr. Kleiderlein inquired of Mr. Wachter, the head of Arco's International Division, regarding the job performance of Mr. James Shafer, a salesperson with whom Mr. Kleiderlein had previously had business contacts.

25. Mr. James Shafer, than age thirty-two, replaced Plaintiff as Regional Manager of the Aromatics Group.

26. After his retirement from Arco, Plaintiff took a job as a petrochemical salesman. In that capacity Plaintiff sells to a number of companies and has received numerous sales awards. All Findings of Fact that are Conclusions of Law are hereby so deemed.

27. All Findings of Fact that are Conclusions of Law are hereby so deemed.

## CONCLUSIONS OF LAW

1. Defendant is an "employer" within the meaning of 29 U.S.C. § 630(b).

2. This Court has jurisdiction over the subject matter of this case under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA").

3. At all times relevant to this lawsuit, Plaintiff was between the ages of forty and sixty and therefore a member of the class which the ADEA protects.

4. Plaintiff timely tendered the complaint required with the United States Department of Labor under 29 U.S.C. § 626(d).

5. In a suit under the ADEA, the plaintiff must present at the outset a *prima facie* case. This *prima facie* case consists of proof that plaintiff was: (1) in the protected age group; (2) qualified to do his job; (3) discharged; and (4) replaced by a younger worker. If Plaintiff makes this case, defendant must then articulate a legitimate, nondiscriminatory reason for discharging plaintiff. Plaintiff may then rebut defendant's articulated reasoning. *Bohrer v. Hanes Corp.*, 715 F.2d 213 (5th Cir.1983); *Reeves v. General Foods Corp.*, 682 F.2d 515 (5th Cir.1981); *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1008 (1st Cir. 1979); *Price v. Maryland Casualty Co.*, 561 F.2d 609 (5th Cir.1977). Plaintiff may prove that defendant's proffered reason is merely a pretext for discrimination by showing either that the reason is untrue as a matter of fact or, although factually true, not the real reason for the discharge. *Elliott v. Group Medical & Surgical SVC*, 714 F.2d 556 (5th Cir.1983).

6. Plaintiff carries the burden of proof throughout an action under the ADEA. Defendant, in articulating its legit-

imate, nondiscriminatory reason for discharge, carries only the burden of going forward. *Reeves*, 682 F.2d at 520–21.

7. In the case at bar, Plaintiff clearly established his *prima facie* case, *i.e.*, (1) he was between the ages of forty and sixty at all times relevant to this lawsuit; (2) he was effectively discharged by being forced to choose between early retirement and immediate termination; (3) his long tenure with Arco and merit raises and evaluation prior to his discharge prove that he was qualified for his job; and (4) he was replaced by Mr. Shafer, a person not in the class protected by the ADEA.

8. Defendant also met its burden of going forward and articulating legitimate, nondiscriminatory reasons for discharging Plaintiff. Defendant's reasons fall into two categories. The first category of reasons involves the specific instances of Plaintiff's alleged poor job performance outlined in Findings of Fact, *supra*. The second category involves Mr. Kleiderlein's contentions that Plaintiff was a lazy employee.

9. Plaintiff carried the burdens of proof and persuasion in proving that Defendant's two explanations of this discharge were pretextual. Plaintiff first proved that the specific instances of alleged misconduct were not serious errors on Plaintiff's part. Defendant argues that Mr. Kleiderlein perceived these incidents as serious misconduct and therefore discharged Plaintiff as a result not of age discrimination but of what may have been erroneous business judgment. Were Defendant correct, the ADEA would not proscribe Plaintiff's discharge, for the ADEA is not a device by which employer's business judgments or personnel evaluations are to be examined. The ADEA forbids only discrimination on the basis of age. *Elliott*, 714 F.2d at 567. However, other circumstances indicate that these incidents were not perceived as justifying Plaintiff's dismissal and that age was in fact the determining factor in Defendant's decision. For example, the incidents were not actually serious; moreover, Plaintiff was neither warned nor evaluated to the effect that termination was under consideration. And the November, 1977 conversation between Plaintiff and Mr. Kleiderlein provides convincing proof that Plaintiff's age rendered him in Mr. Kleiderlein's eyes unsuitable as a salesperson. Second, Defendant adduced no evidence Plaintiff's alleged "laziness" hindered his job performance, while Plaintiff's evaluation, assessments from Mr. Brady, and work in Atlanta and in Houston subsequent to his discharge rebut this charge.

10. All Conclusions of Law that are Findings of Fact are hereby so deemed.

A hearing will be scheduled to determine the amount of damages, attorneys' fees, and court costs. Final judgment will be entered after that hearing.

The Clerk shall file this Order and provide a true copy to counsels for all parties.