JOHN R. MARSHALL & Co. *v.* THOMAS R. SIMPSON, Sheriff, et als.—PEET, SIMMS & Co. *v.* Same.—Consolidated Cases.

In pointing out property to a Sheriff to seize, it is sufficient to inform him where the property is.

A bare suspicion that there might be some difficulty with regard to the title to property pointed out, does not justify the Sheriff in refusing to seize—his neglect to seize is at his own peril.

Where a party has suffered from the neglect of the Sheriff to make the seizure, he is only entitled to recover from the Sheriff, and his sureties, the exact amount he would have received, if the Sheriff had done his duty.

APPEAL from the District Court of the Parish of Caddo, *Creswell*, J.

*Land & Winans*, for plaintiffs. *H. B. Levisee*, for defendant and appellant.

MERRICK, C. J. "This is an appeal from a judgment against the Sheriff of Caddo Parish, and his securities, upon his bond, for the misfeasance of the Deputy Sheriff in not executing two writs of *fi. fa.*, placed in his hands by the plaintiffs. The judgment is for the value of two slaves, the property of *Waddill*, one of the judgment debtors of plaintiff, which had been pointed out for seizure to the Deputy Sheriff, and were," it is alleged, "spirited off, in consequence of his failure to seize."

The judgment was in favor of the plaintiffs for $2,200, the value of the negroes, and the defendants appeal.

It is contended that the property was not properly pointed out by the plaintiffs counsel, and, therefore, the Sheriff was not liable for his failure to seize.

The testimony shows that the negroes had been hired out by an agent of the debtor in execution to *W. W. Harper*, and that plaintiffs' attorney directed the Deputy Sheriff to go immediately and seize the two negroes, and informed him that they would be pointed out to him by *Mr. Harper*, or his overseer, who were expecting him.

This was sufficient. It was not necessary that the plaintiffs' attorney should accompany the Sheriff to point out the property. It was enough that he had informed the Sheriff where the property was. It then became the duty of the Sheriff to make the seizure. "As soon as the Sheriff has received the writ, he must execute it, without delay, by seizing the property of the debtor, which he shall find in his parish." C. P. 643. Instead of seizing the property without delay, the Deputy Sheriff, it would seem, informed the father of the defendant in execution, that the *fi. fa.* had issued, and in consequence of this information, and the delay in seizing, the defendant in execution was enabled to remove the slaves.

It is further contended that there was doubt as to the title of the property pointed out, and, therefore, the Sheriff was not bound to seize the property. When the Sheriff was charged with the writ, and directed to seize, it does not appear that he made any objections on account of the title. A bare suspicion that there might be some difficulty in regard to the title, did not justify him in refusing to seize. If he would justify his conduct, under the circumstances of this case, he should show clearly, that the defendant in execution was not the owner of the property. His neglect to seize was at his own peril.

Inasmuch as there were concurrent judicial mortgages, and the negroes could not have been sold without the costs and expenses incident to the Sheriff's sale, it is contended by the defendant's counsel, that the judgment of the lower court is erroneous in allowing the plaintiffs the full value of the slaves.

We think this objection well taken. The Sheriff and his sureties are sued for the acts of the Deputy Sheriff. The plaintiff is only entitled to the exact amount of damages he has sustained. He cannot recover more than he would have received if the Deputy had done his duty. 1 Rob. 292, *Bonnabel* v. *Bouligny*; 5 N. S. 126 ; 9 An. 174.

Plaintiff alleges that he informed the Sheriff that the property indicated, was all the property the defendant in execution possessed in the parish, and it is quite clear, on the facts disclosed in this case, that had the slaves been seized, the creditors holding the concurrent judicial mortgages, would have claimed the application of their portion of the funds (as they did in the case of the slave *Fanny*) to their own executions and judgments. 16 L. R. 170 ; 5 An. 313 ; C. P. 710.

Moreover, had there been a sale of the property, the costs of the execution, made in effecting it, would also have been deducted. In this instance it would merely have been commissions on the amount of sale, as other property had been seized, and the notices and advertisements would have occasioned no additional expense. Making the proper deduction, and allowing plaintiffs their *pro rata* of the residue, they are entitled to recover $1,853, to be divided between them also *pro rata*. There is no complaint as to the allowance of interest, and we will render the judgment in the same form as that appealed from.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed ; and it is now ordered, adjudged and decreed, that said *John R. Marshall & Co.* have and recover of the said defendants *Thomas R. Simpson, John P. Hailey* and *Henderson Markham, in solido*, the sum of one thousand and fifty-four dollars and twenty five cents, with five per cent. interest thereon, from the 2d day of January, 1857, until paid ; and that *Peet, Simms & Co.* also recover of the same defendants, *in solido*, the sum of seven hundred and seventy-eight dollars and seventy-five cents, with like legal interest thereon, from said 2d day of January, 1857, until paid ; and that the said defendants pay the costs of the lower court, and the said plaintiffs the costs of the appeal.