141 So.2d 829

**John ALICE, doing business as John Alice Export Company**

**v.**

**TACA INTERNATIONAL AIRLINES, S. A.**

No. 45957.

June 4, 1962.

Phelps, Dunbar, Marks, Claverie & Sims, J. Barnwell Phelps, Peter G. Burke, New Orleans, for defendant-appellant.

Chehardy & Werhan, John C. Werhan, New Orleans, for plaintiff-appellee.

HAWTHORNE, Justice.

John Alice, doing business as John Alice Export Company, instituted this suit against Taca International Airlines, S. A., a foreign corporation organized under the laws of El Salvador and authorized to do business in Louisiana. Plaintiff seeks to recover the invoiced price of two C.O.D. shipments of merchandise, plus a deposit for return costs, as damages for the defendant's failure to return these shipments which the consignee had failed to accept. In the district court plaintiff was awarded damages of $1295.06, the amount prayed for. The Court of Appeal, Fourth Circuit,

allowed defendant as a credit $54.84; the amount of its freight charges to Central America, and accordingly amended the judgment by reducing the award to $1240.-22. 134 So.2d 922. On application of the defendant we granted a writ of certiorari.

Plaintiff is engaged in the export business, buying merchandise for his own account for shipment to foreign countries. In the course of this business he purchased merchandise for shipment and sale to Macri Construction Company, San Salvador, El Salvador, Central America. In April, 1958, the plaintiff made two freight-collect C.O.D. shipments of materials so purchased to that company via the defendant airline. When these two shipments, covered by invoices for $235.83 and $917.17 respectively, reached El Salvador, the defendant delivered them to the customs authorities there in compliance with the laws of that country, and notified the consignee Macri of their arrival.

When merchandise shipped from New Orleans to San Salvador arrives at the airport there, it is immediately delivered to the customs warehouse, and the carrier then notifies the consignee of the arrival of the merchandise. The consignee is required to pay the C.O.D. charges at the airline office, and the airline office then endorses the airway bill and gives it to the consignee. The consignee, or its broker if it has one,

goes to the customs warehouse and upon payment of all duties receives the shipment.

Following the normal course of business Taca Airlines notified Macri Construction Company of the arrival of the C.O.D. shipments here involved. The construction company, however, was in financial difficulties and never paid the carrier the C.O.D. charges. Subsequently Macri went into bankruptcy.

In January, 1959, plaintiff notified the New Orleans office of the carrier by telephone to return the merchandise. At this time the defendant carrier agreed to return the merchandise but informed plaintiff that freight charges to and from San Salvador and charges of the customs authorities would have to be paid and that it needed a letter of confirmation authorizing customs to release the goods to it. In compliance with defendant's request the plaintiff on January 28, 1959, sent defendant his check for $142.06 to cover all charges connected with having the merchandise returned and a letter confirming his telephone instructions for the return of the merchandise. The defendant accepted this check and delivered this letter to the customs authorities in El Salvador for release of the merchandise. For the next five or six weeks the plaintiff repeatedly asked the defendant's employees in New Orleans about the return of the shipments. In these conversations he told defendant's employees that his suppliers had

agreed to give him credit for the merchandise he had bought from them and shipped to Macri if, but only if, these goods were returned promptly. All the information he ever got from the defendant's employees was that the matter was being processed and that they had not heard from their office in El Salvador.

On March 9, 1959, plaintiff wrote the defendant that his suppliers had given him a limit of 10 days for the return of the merchandise and would not accept it later, and that consequently if the goods were not returned within this time, he would be compelled to make a formal claim for the full amount of the shipments plus all charges involved. On March 19 he wrote the defendant making this formal claim, and on March 24 defendant replied rejecting the claim and informing him that the customs officials in El Salvador had mislaid the January 28 letter of authorization and that it could do nothing further until another letter was furnished.

The parties are in substantial agreement on all matters relating to their negotiations except as to the date on which plaintiff was notified that his first letter of authorization was lost and another was needed. On the trial of the case defendant offered the testimony of a witness to show that it was upon receipt of plaintiff's letter of March 9 that it informed plaintiff of the loss of his original letter of authorization and the necessity

of a second letter. Plaintiff denied this. The trial judge, who saw and observed the witnesses testify, found as a fact that this notification was not made until defendant's letter of March 24, 1959, denying plaintiff's formal claim. We agree with the trial judge's finding. Moreover, if the letter of January 28, which was lost by the customs officials, was sufficient authority to release the merchandise, the letter of March 9, as found by the Court of Appeal, was also sufficient authority, for both letters were addressed to defendant and directed it to return the merchandise.

When the defendant did not return the merchandise as instructed, the plaintiff lost the opportunity to return it to his suppliers for full credit.[1] Plaintiff then instituted this suit, claiming as damages the invoiced price of the merchandise plus the deposit paid for return costs.

▮ In our view the district court and the Court of Appeal correctly concluded that when the consignee did not accept and pay for the goods, the defendant as a carrier of C.O.D. shipments was under a duty to return the goods within a reasonable time after being instructed to do so by the consignor, and that the defendant had failed in its duty.

The general rule is stated in 13 C.J.S. Carriers § 186(2), p. 384, thus:

"The duty of the carrier of goods shipped C.O.D. is fully performed where, after the consignee refuses to receive and pay for them, it tenders back the goods to the consignor. Ordinarily, it is the duty of the carrier to give notice to the consignor of the failure or refusal of the consignee to accept and pay for the goods, after allowing the consignee a reasonable time in which to do so. * * * A return of the goods to the consignor after the consignee's refusal thereof must be made within a reasonable time."

This brings us to the question of the amount of damages sustained by plaintiff in the instant case. It is our view that both the district court and the Court of Appeal erred when they awarded plaintiff as damages *the invoiced price* of the merchandise which was not returned.

▮ In awarding the invoiced price the Court of Appeal cited the case of Justin v. Delta Motor Line, Inc. (La.App.), 43 So.2d 53. That case is full authority for the proposition that where a common carrier breaches its duty to act as agent for the shipper in the collection of the price, it is liable like any other collection agency for

---

1. The merchandise was in fact never returned by the defendant, and plaintiff paid his suppliers for it. Customs officials in El Salvador wrote the defendant that one of the shipments was sold by the customs authorities at public auction on September 29, 1959, and that the other shipment also was to be sold at public auction.

whatever could have been *collected* if the duty had been fulfilled. In that case the court said: "Our jurisprudence is in harmony with that of the common law to the effect that the amount of the obligation entrusted to the agent for collection is the prima facie measure of damages suffered by the principal, where the agent fails to collect the obligation because of negligence and lack of diligence. * * *"

In the instant case the defendant common carrier did not fail in its duty to collect the invoiced price. It did everything possible toward this end, and failed only because the consignee did not accept the merchandise and pay the C.O.D. charges on account of financial difficulties.

◼ As already stated, however, the defendant did fail in its duty to return the goods within a reasonable time after being instructed to do so by the shipper, and by its breach of this duty plaintiff was deprived of the opportunity to return the merchandise for full credit and had to pay his suppliers the purchase price charged him. And it is this amount, plus certain charges paid for return of the goods, which represents the damages that he has sustained in the instant case. To award plaintiff his invoiced price, which includes the profit he would have made had the consignee accepted the merchandise and paid the C.O.D. charges,

would permit him to recover more than he would have received if the carrier had performed its duty to return the merchandise. See Marshall & Co. v. Simpson, Sheriff, 13 La.Ann. 437.

The record contains no evidence to show what amount the plaintiff paid his suppliers for the merchandise which the carrier failed to return, and since this amount is the main element of the damages which plaintiff is entitled to recover, we shall remand the case so that it can be determined.

Both courts below were correct in awarding plaintiff the charges connected with having the merchandise returned, and the Court of Appeal was correct in allowing the defendant a credit of $54.84, the amount of its freight charges to Central America.

One additional matter remains for our consideration. On the basis of an alleged admission of plaintiff Alice on cross-examination, defendant contends that Alice received 40 or 45 per cent of the amount due him by Macri from that company's trustee in bankruptcy, and that accordingly defendant should be given credit to this extent in any judgment rendered against it. The district judge in his written reasons for judgment did not consider this testimony damaging enough to plaintiff's case to even mention. The testimony of plaintiff Alice on this

point is conflicting and confused, and no other evidence was adduced on this issue. The Court of Appeal denied this claim of defendant, saying in a per curiam on application for rehearing that the 40 or 45 per cent recovery by the plaintiff must have been on account of the value of previous shipments by him to Macri. Inasmuch as the consignee never accepted the C.O.D. shipments, delivery of the merchandise was never made to it, and it never had custody or control of it, the Court of Appeal was probably correct when it concluded that plaintiff would have had no claim against the bankrupt estate for the amount of the invoices involved here, and that any sum he received from the trustee was not in settlement of the claim which he is making here against the carrier. However, since we have concluded to remand the case for the reason given above, on the remand further evidence may be adduced for clarification of this matter.

For the reasons assigned the judgments of the district court and the Court of Appeal are annulled and set aside, and the case is remanded to the district court for further proceedings in accordance with the views here expressed. Plaintiff-respondent John Alice is to pay all costs incurred in this court; all other costs are to be assessed after final determination of the cause.