Norris A. **BELANGER**

v.

**KEYDRIL COMPANY.**

Civ. A. No. 83–3487.

United States District Court,
E.D. Louisiana.

Oct. 23, 1984.

Patrick M. Amedee, New Orleans, La., for plaintiff.

Paul O. Dicharry, New Orleans, La., for defendant.

## MEMORANDUM OPINION

FELDMAN, District Judge.

Norris A. Belanger brought this age discrimination action against his former employer, Keydril Company. In 1976, Mr. Belanger went to work for Keydril as a toolpusher for drilling operations outside the United States. When Keydril discharged him in July 1982 he was a toolpusher on the KEY GIBRALTAR, a drill-ing rig located in waters over which the Republic of Zaire exercised exclusive and sovereign national jurisdiction. At the time of his discharge Mr. Belanger was 56 years old. The plaintiff claimed that Keydril wrongfully discharged him because of his age. The defendant contended that he was discharged for good cause because the plaintiff violated Keydril's safety rules, causing injury to others, and that the plaintiff's age was not a consideration in the termination decision.

The plaintiff brought this suit under the Federal Age Discrimination in Employment Act (Federal "ADEA"), 29 U.S.C. §§ 621–34, the General Maritime Law, and also the Louisiana Age Discrimination in Employment Act, La.R.S. 23:971–76 (alleging diversity jurisdiction regarding the Louisiana Act). Keydril contested the subject matter jurisdiction of this Court. Plaintiff is a citizen of Louisiana and the defendant is a Delaware corporation with its principal place of business in Texas. Therefore, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. This Court, applying Louisiana's conflict of laws rules, also holds that the Louisiana Act applies in this case. Federal question and maritime jurisdiction, on the other hand, do not exist.

1. *Extraterritorial Reach of the Federal Act*

 In *Cleary v. United States Lines*, 728 F.2d 607 (3d Cir.1984), *aff'g* 555 F.Supp. 1251 (D.N.J.1983), the Court of Appeals for the Third Circuit held that the Federal ADEA does not apply to American nationals employed outside the United States by American employers. This Court agrees.[1] Section 7 of the Federal ADEA incorporates by reference Section 13(f) of

---

1. This Court also agrees with the district court, in *Cleary,* that "[w]here the discriminatory decision may have taken place is of no consequence." 555 F.Supp. at 1251. *See also Zahourek v. Arthur Young & Co.,* 567 F.Supp. 1453, 1457 (D.Colo.1983). *But see Willson v. Continental Oil Co.,* No. 82–2999 (S.D.Tex. July 17, 1984). That is, regardless of whether the employer made its termination decision through its personnel in the United States or abroad, the Federal ADEA simply does not apply if the employee was working in a foreign country. If Congress believed that the situs of the employer's decision was the determining factor, then it would have clearly said so. Instead, Congress believed that the workplace of the employee should be the determining factor.

the Fair Labor Standards Act, which provides that:

"this title shall not apply with respect to any employee whose services during the workweek are performed in a workplace within a foreign country."

29 U.S.C. § 213(f). Other courts faced with this issue have agreed that Section 13(f) of the Labor Act restricts the territorial reach of the Federal ADEA to individuals employed within the United States. *Pfeiffer v. Wm. Wrigley Jr. Co.*, 573 F.Supp. 458 (N.D.Ill.1983); *Zahourek v. Arthur Young & Co.*, 567 F.Supp. 1453 (D.Colo.1983).

At the time of the alleged discriminatory act, Mr. Belanger, an American national, was working for Keydril, an American corporation, as a toolpusher on a rig within the sovereign jurisdiction of the Republic of Zaire in Africa. On its face, then, the Federal ADEA does not apply to Mr. Belanger.

 The plaintiff argues, however, that he should be treated differently from the plaintiffs in *Cleary, Zahourek,* and *Pfeiffer* because he is a seaman[2] and is entitled to some special status or protection. Mr. Belanger claims that this special seaman status arises from the unique protections provided by the General Maritime Law to American seamen working abroad. The argument is wide of the mark. The special status a seaman enjoys under maritime law does not apply to an age discrimination claim. The unique protections provided by the General Maritime Law to seamen are remedies for the physical dangers and hazards of working at sea. Age is not such a hazard. Thus, whatever special status Mr. Belanger may have as a seaman does not reach his age discrimination claim against Keydril.[3]

2. It is an uncontested fact that Mr. Belanger was employed by Keydril as a seaman and member of the crew of the KEY GIBRALTAR, a "vessel" for purposes of the General Maritime Law.

3. Seamen are provided with three special remedies against their employers: maintenance and cure, a warranty of seaworthiness, and a negligence action through the Jones Act, 46 U.S.C. § 688. These three remedies are designed to

### 2. *Age discrimination under the General Maritime Law*

 The next question, namely, whether this Court has jurisdiction under the General Maritime Law, focuses on whether that body of law provides a basis for a cause of action for wrongful discharge based on age discrimination. That is a question of first impression. For reasons stated below, this Court holds that it does not have the authority to create a cause of action for age discrimination under the General Maritime Law.

*Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), and *Smith v. Atlas Off-Shore Boat Service, Inc.*, 653 F.2d 1057 (5th Cir.1981), are central to plaintiff's claim that the General Maritime Law gives him a cause of action. In *Moragne*, the Supreme Court created a wrongful death action under the General Maritime Law for death caused by the unseaworthiness of a vessel located within state territorial waters. *Moragne* is clearly distinguishable from Mr. Belanger's case. In *Moragne* the duty to provide a seaworthy vessel already existed. The Supreme Court, in *Moragne*, was not creating a new duty to maintain a vessel in a seaworthy condition; rather, the Court created a remedy for an already existing legal duty. The Court was dealing with a remedial question; a matter of enforcing an existing right. *See* 398 U.S. at 382 & 393, 90 S.Ct. at 1783. Mr. Belanger, however, asks this Court to create not only a remedy, but also a new legal duty. Significantly, a primary duty relating to fair and nondiscriminatory employment practices does not already exist under the General Maritime Law and it is not within this

protect seamen who have suffered *personal injuries* in their unique line of work. According to Gilmore and Black, "[t]he 'poor and friendless' seaman is thus the beneficiary of a system of accident and health insurance at shipowner's expense more comprehensive than anything yet achieved by shorebound workers." G. Gilmore & Black, The Law of Admiralty § 6–6, at 282 (2nd ed. 1975).

Court's power to create one. Protection for age discrimination is a matter of legislative grant. That is for the Congress.

Similarly, the Fifth Circuit's opinion, in *Smith*, fails to provide support for the creation of an employment discrimination action under the General Maritime Law. In *Smith*, the Court held that a seaman whose at-will employment was terminated because he filed an action for his injuries under the Jones Act was entitled to maintain an action for damages for wrongful discharge under the General Maritime Law. The Court's holding was rooted in the premise that "a discharge in retaliation for the seaman's exercise of his legal right to file a personal injury action against the employer constitutes a maritime tort." 653 F.2d at 1063. The *Smith* Court did not create a new cause of action for wrongful discharge under the General Maritime Law. Rather, the case was specifically limited to situations in which a seaman is discharged in retaliation for seeking to enforce an already existing right under maritime law. The Court was concerned that vessel owners might otherwise thwart a seaman's privilege to exercise his legal rights. The present case does not pose such a problem; Mr. Belanger does not claim that he was discharged by Keydril in retaliation for exercising some legal right under the General Maritime Law. And no authority is cited, nor has the Court found any, which establishes that the General Maritime Law protects one from age discrimination.

### 3. *Choice of Law*

Since this case is based on diversity jurisdiction, this Court is bound to apply the conflict of law principles of the forum state, Louisiana. *Klaxon Company v. Stentor Elect(r)ic Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Louisiana has adopted the approach embodied in the Restatement (Second) of Conflict of Laws. *See Burbank v. Ford Motor Co.*, 703 F.2d 865 (5th Cir. 1983); *Jagers v. Royal Indemnity Co.*, 276 So.2d 309 (La.1973). Applying the "interest analysis" test of Sections 6(2) and 188(2) of the Restatement, this Court finds that Louisiana law applies.[4]

Simply stated, Louisiana has the greatest policy interest in the issues here. That is how the "interest analysis" works.

Mr. Belanger was a citizen of Louisiana when he was hired by Keydril out of its Louisiana office in 1976, and he has remained a citizen of this State. Although Keydril is a Delaware corporation, with its principal place of business in Texas, it is also authorized to do and does business in Louisiana. Mr. Belanger's employment contract was executed by the parties in Keydril's Houston, Texas office, but Key-

---

**4.** Section 6(2) of the Restatement of Conflicts states:

(2) When there is no such [state] directive, the factors relevant to the choice of the applicable law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of the other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Section 188(2) states:

(2) In the absence of an effective choice of law by the parties ..., the contracts to be taken into account in applying the principles of section 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Section 188(2), which provides conflict rules for contract issues, (rather than section 145, which provides conflict rules for tort issues), provides the best guidance in resolving the conflict problem in this age discrimination case. *See Dailey v. Transitron Electronic Corp.*, 475 F.2d 12, 14 (5th Cir.1973) (applying section 188(2) in a breach of employment contract case).

dril corresponded with Mr. Belanger at his Louisiana residence about the terms of his employment. Furthermore, Mr. Belanger paid Louisiana income tax while he was working for Keydril. Keydril's Houston office also mailed Mr. Belanger's pay checks to his Louisiana residence.

Based on the nexus Mr. Belanger and Keydril had with the State of Louisiana, this Court believes that it is fair and just to assume that Keydril either expected or should have expected to be subject to the laws of this State. The choice of Louisiana law is neither capricious or fundamentally unfair. *Allstate Insurance Co. v. Hague*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981). Moreover, Louisiana has a significant interest in enforcing its stated policy against age discrimination. Otherwise, it would not have felt the need to enact its own statute, in addition to the Federal ADEA, forbidding and penalizing age discrimination in employment. Louisiana courts have often recognized the interest of this State in protecting its citizens from damage caused by the wrongful acts of others. *See, e.g., Jagers v. Royal Indemnity Co.*, 276 So.2d 309 (La.1973).

Louisiana has also expressed a more substantial interest in this litigation than the State of Texas. The Texas legislature has expressly precluded the application of its law against age discrimination to the employment of persons outside the State of Texas.[5] Tex.Rev.Civ.Stat.Ann. art. 5221k, § 5.10 (Vernon Supp.1984) Although Mr. Belanger executed his employment contract with Keydril in Texas, he was not employed to perform his services within that State.[6] Thus, the Texas Act prohibiting age discrimination does not apply to him.

■ It is doubtful that the Republic of Zaire has much of an interest in this litigation. The only connection, known by this Court, that Keydril had with Zaire is that its rig, the KEY GIBRALTAR, on which the plaintiff was working, was under contract to Zaire Gulf Oil Company, who was conducting drilling operations within the territorial waters of Zaire. Zaire Gulf Oil Company, not Keydril, was granted sovereign authority by Zaire for such operations. Mr. Belanger's contacts with Zaire were also not substantial. He merely paid taxes there, and received a foreign tax credit against his taxable income on his U.S. return in 1982. Furthermore, assuming that Zaire law applies, which is not the opinion of this Court, the parties have not proved the substance of Zaire law to this Court. Under the circumstances, Louisiana courts may presume that the foreign law is the same as the law of the forum, absent a showing to the contrary.[7] *Alice v. Taca International Airlines, S.A.*, 134 So.2d 922 (La.App.1961), annulled and remanded on other grounds, 243 La. 97, 141 So.2d 829 (1962); *Doiron v. Vacuum Oil Co.*, 164 La. 15, 113 So. 748 (1927). None has been made here.

### 4. *Applicability of the Louisiana Act*

■ Keydril argues that the Louisiana Act does not apply in this case because the

---

**5.** As explained by the Supreme Court of Louisiana, in *Jagers*, a false conflict of laws question exists when the second state has no interest in the litigation. 276 So.2d at 311 & n. 2.

**6.** This Court recognizes, however, that this section of the Texas statute could also be interpreted as focusing on where the contract of employment was executed and not on whether the employee actually performed services within the State of Texas. This interpretation would also make sense. For example, in the present case, the Texas Employment Commission made unemployment compensation payments to Mr. Belanger in 1983. Thus, one would think that Texas would have a substantial interest in en-

forcing its prohibition against age discrimination in this litigation and preventing Mr. Belanger from wrongfully becoming a burden to it. But this Court cannot find any law interpreting section 5.10 of the Texas statute. If the Texas statute did apply in this case, there would be no conflict. The substantive provisions of the Louisiana Act and the Texas statute are similar.

**7.** For comprehensive discussions of this presumption, see *Symonette Shipyards, LTD. v. Clark*, 365 F.2d 464, 468 n. 5 (5th Cir.1966) *cert. denied*, 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625 (1967); *Seguros Tepeyac, S.A., Compania Mexicana v. Bostrom*, 347 F.2d 168, 174–75 n. 3 (5th Cir.1965).

Act does not apply "to any *employer* who is *subject to* the provisions of the Federal Age Discrimination in Employment Act." La.R.S. 23:976 (emphasis added). Although Keydril agrees that Mr. Belanger's age discrimination claim is not covered by the Federal ADEA because of that Act's territorial limitation to the United States, it contends that Keydril is still "subject to" the Federal Act pursuant to 29 U.S.C. § 630(b). Section 630(b) makes the Federal ADEA applicable to any employer "engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." (The fact that Keydril meets the Act's definition of an "employer" is not in dispute.) This Court rejects Keydril's argument. In this case, Keydril is not subject to the Federal ADEA. As previously stated, the jurisdictional provision of Section 13(f) of the FLSA, which Section 7 of the Federal ADEA incorporates by reference, prohibits the reach of the Federal Act to employees working in a foreign country.

At the time of his discharge from employment with Keydril, Mr. Belanger was working in Zaire. Thus, while Keydril, as an "employer", may be generally covered by the Federal Act, this coverage does not extend to its employees working in foreign countries.

The conclusion that the reach of the Federal ADEA does not extend to American employers regarding their overseas employees has substantial support. For example, the EEOC, the authority empowered to investigate charges of age discrimination, is specifically precluded by Section 213(f) of the Labor Act from exercising its powers outside the territorial jurisdiction of the United States. Furthermore, as to its employees working in foreign countries, Keydril is exempted by Section 213(f) of the Labor Act from the record-keeping requirements imposed by Section 211(c) of the Act. This Court believes that it would be anomalous to conclude that Keydril is within the reach of the Federal Act in this case when Congress did not authorize powers of investigation and record-keeping requirements co-extensive with that reach. See *Cleary v. United States Lines, Inc.*, 555 F.Supp. 1251, 1259-60 (D.N.J.1983). The legislative history of Section 213(f) of the Labor Act also indicates that that Act, and thus the Federal Act have absolutely no application abroad. *See* S.Rep. No. 987, 85th Cong. 1st Sess., reprinted in 1957 U.S. Code & Ad.News 1756. Since, in this case, Keydril is not *subject to* the Federal ADEA, the Louisiana Act applies.

The Louisiana Act is a fairly new statute and the Louisiana courts have not yet been called upon to interpret its substantive provisions. But the prohibition against age discrimination is identical under the Federal and Louisiana Acts. This Court, consequently, turns to the case law interpreting the Federal Act for guidance in applying the Louisiana Act.

Under the Federal ADEA, the plaintiff first has the burden of proving a prima facie case.[8] *See Bohrer v. Hanes Corp.*, 715 F.2d 213 (5th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984); *Haring v. CPC International, Inc.*, 664 F.2d 1234 (5th Cir. 1981). If the plaintiff establishes a prima facie case, a presumption that the employer discriminated arises. Then, "[i]f the defendant carries the burden of production of nondiscriminatory reasons for the discharge, the presumption 'drops from the case'." *Reeves v. General Foods Corp.*, 682 F.2d 515, 521 (5th Cir.1982) (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255 n. 10, 101

8. The plaintiff must prove that
(1) he was in the protected age group between the ages of forty and seventy,
(2) his employment with the defendant was involuntarily terminated,
(3) he was qualified to perform the job that he was employed to perform, and
(4) he was replaced by a person outside the protected age group comprising individuals between the ages of forty and seventy.

S.Ct. 1089, 1095 n. 10, 67 L.Ed.2d 207 (1981)). "The fact that the prima facie case *once* existed is no longer of special benefit to the plaintiff." *Reeves*, 682 F.2d at 522–23 (emphasis in original). Because the presumption disappears, it is then incumbent upon the plaintiff "to introduce substantial evidence to show that [the defendant's] articulated reasons were pretextual and that he had been discriminated against *because of age.*" *Reeves*, 682 F.2d at 523 (emphasis in original) (footnote omitted).[9] In order for the plaintiff to prevail, he must show that age was a determinative factor in the defendant's decision to terminate his employment.

 Mr. Belanger's Louisiana age discrimination claim was tried to a jury. The jury specifically found that Keydril terminated Mr. Belanger's employment for reasons unrelated to Mr. Belanger's age. Since the evidence was sufficient to support the jury's verdict, this Court denied Mr. Belanger's motion for a judgment n.o.v. or, in the alternative, for a new trial and refused to interfere with the jury's findings.

**9.** Mr. Belanger claimed that he could prevail by proving either that his age more likely motivated Keydril to terminate his employment *or* that Keydril's explanation for its termination decision is unworthy of belief. That is not, however, a correct interpretation of the law. In *Reeves*, the plaintiff, relying on the Fifth Circuit's decision in *Haring*, asserted that if the jury found that the defendant's explanation for its termination decision was wholly unworthy of credence, he was entitled to rely on a prima facie case as being substantial evidence from which the jury could infer age discrimination without the proof of intentional age-based discrimination. The Fifth Circuit disagreed and explained that the *Haring* decision did not support the plaintiff's argument. *Reeves*, 682 F.2d at 522 n. 11. Moreover, the *Reeves* court made clear that the plaintiff has the burden of proving both that the defendant's explanation is a pretext *and* that the defendant discriminated against him on the basis of age. *Reeves*, 682 F.2d at 523.

This Court recognizes that there may be some confusion presented by *Bohrer v. Hanes Corp.*, 715 F.2d 213 (5 Cir.1983) *cert. denied,* — U.S. ——, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984), a case decided after *Reeves*. In *Bohrer*, the court

stated that "the plaintiff may either prove that age more likely motivated the employer, *or* discredit its articulated rationale." *Bohrer*, 715 F.2d at 218 (emphasis added) (citations omitted). *Bohrer* cannot be read as overruling the dual requirement established in *Reeves*. The *Bohrer* court recognized that the presumption of discrimination arising from the plaintiff's prima facie case disappears when the employer offers a legitimate reason for its termination decision. 715 F.2d at 218. If this presumption drops from the case upon a showing of a legitimate reason, then the plaintiff must respond with some evidence of age discrimination. In other words, the reason offered by the employer must be a cover-up for age discrimination. Whether it is a pretext for some reason other than age is of no concern in considering the merits of a plaintiff's age discrimination claim. Also, it is unimportant if the defendant was incorrect in the decision to terminate. Unless the plaintiff can show that age was a reason, plaintiff may not prevail. *See Jones v. Orleans Parish School Board,* 679 F.2d 32, 38, *modified on other grounds,* 688 F.2d 342 (5 Cir.1982), *cert. denied,* 461 U.S. 951, 103 S.Ct. 2420, 77 L.Ed.2d 1310 (1983); *De Anda v. St. Joseph Hospital,* 671 F.2d 850, 854 n. 6 (5 Cir.1982).