Pershing F. WONG, Plaintiff,

v.

KEYSTONE SHIPPING CO., a corporation, Margate Shipping Co., a corporation, and Keystone Tankers, Inc., a corporation, Defendants.

No. C–84–7130 JPV.

United States District Court, N.D. California.

May 9, 1985.

Martin J. Jarvis, Jarvis, Miller, Brodsky & Baskin, San Francisco, Cal., for plaintiff.

James Quirk, Brobeck, Phleger & Harrison, San Francisco, Cal., for defendants.

## AMENDED ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

VUKASIN, District Judge.

### INTRODUCTION

Plaintiff Pershing F. Wong, a United States Coast Guard licensed deck officer, was employed as Second Mate aboard the SS CORONADO, a United States flag tanker vessel operated by defendants [collectively, "Keystone"] in interstate and foreign commerce. In the Autumn of 1984, while the vessel was en route from Europe to the Netherlands Antilles, a labor dispute developed between Keystone and plaintiff's union, the International Organization of Masters, Mates & Pilots [the "MM & P"], arising out of Keystone's September 27th termination of the parties' collective bargaining agreement. On or about October 3, 1984, the MM & P instructed plaintiff and other MM & P member deck officers on duty aboard Keystone vessels to engage in "job action"—i.e., strike—against Keystone by immediately ceasing all work not related to the security of the affected craft. On October 8 and 9 of that year, after the SS CORONADO had reached Aruba, Netherlands Antilles, plaintiff complied with these instructions, and refused to perform his assigned duties as Second Mate. Because of this conduct, the Master of the vessel relieved plaintiff, replacing him with another licensed deck officer. Plaintiff's employment with Keystone was thus terminated effective October 9, 1984.

On the following November 16 plaintiff filed his complaint under the general maritime laws, alleging that he was discharged solely because of his membership in and lawful activities on behalf of the MM & P and that said discharge effected a breach of the shipping articles which constituted his maritime employment contract with Keystone. He seeks over $7 million in punitive and other tort damages.

Keystone's motion for summary judgment came on regularly for hearing before this Court on April 25, 1985. Having considered the briefs and entertained oral argument on the motion, the Court concludes that there is no genuine issue as to any material fact and that defendants are entitled to judgment as a matter of law pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

### DISCUSSION

#### 1 Factual Summary

Plaintiff's complaint and the declarations of the parties establish that there is no genuine issue with respect to the following material facts:

1. Plaintiff's duties and responsibilities as a licensed deck officer and Second Mate made him a "supervisor" within the meaning of the National Labor Relations Act, as amended ["N.L.R.A."], 29 U.S.C. §§ 151 et seq., 152(11). Keystone is an "employer" subject to the N.L.R.A., 29 U.S.C. § 152(2).

2. Throughout his employment with Keystone, plaintiff was a member in good standing of the MM & P, a "labor organization" subject to the N.L.R.A., 29 U.S.C. § 152(5).

3. On September 27, 1984, Keystone terminated its collective bargaining agreement with the MM & P; the agreement had applied to the licensed deck officer supervisory personnel, including plaintiff. At no time since the termination date has the MM & P contended that Keystone was without the legal or contractual right to terminate the collective bargaining agreement, or to refuse to negotiate with the MM & P for a successor agreement.

4. Plaintiff was offered continuing employment as a licensed deck officer and Second Mate aboard the SS CORONADO, subject to new wages and working condi-

tions to be made effective upon the termination of the then-current shipping articles aboard the vessel. Plaintiff declined this offer.

5. The shipping articles applicable to plaintiff's employment were opened on February 12, 1984, in New York harbor. They did not include a promise by or impose a duty on Keystone to engage in collective bargaining with the MM & P.

6. On or about October 3, 1984, the MM & P issued instructions to its licensed deck officer members, including plaintiff, serving aboard Keystone vessels: in substance, these instructions directed said MM & P deck officers to engage in "job action" against Keystone by immediately ceasing all work of any kind except that involving security of the vessels.

7. On October 8 and 9, 1984, while the SS CORONADO was at Aruba, in the Netherlands Antilles, plaintiff engaged in a strike and refusal to perform his assigned duties as a licensed deck officer and Second Mate aboard the vessel.

8. Because of this strike, the Master of the SS CORONADO on October 9, 1984, relieved and replaced plaintiff as the vessel's Second mate, thereby terminating his employment with Keystone.

9. Plaintiff's complaint and the damages for which he prays are based on an alleged tortious wrongful discharge grounded solely upon his membership in the MM & P and his lawful activities as a member of that labor organization.

*2 Legal Analysis*

The national labor policy articulated by Congress in Section 14(a) of the N.L.R.A., 29 U.S.C. § 164(a), mandates that the theories upon which plaintiff has based his complaint must be rejected. Section 14(a) states:

Nothing herein shall prohibit any individual employed as a supervisor from becoming or remaining a member of a labor organization, but no employer subject to this subchapter shall be compelled to deem individuals defined herein as supervisors as employees for the purpose of any law, either national or local, relating to collective bargaining.

This policy was upheld in *Beasley v. Food Fair of North Carolina, Inc.,* 416 U.S. 653, 94 S.Ct. 2023, 40 L.Ed.2d 443 (1974), where the Supreme Court enforced the right of employers subject to the N.L.R.A. to discharge supervisory employees for the very reason—lawful labor organization membership and activities—which plaintiff alleges to have been the sole basis for his discharge by Keystone. In *Beasley* the Court looked to the legislative history of Section 14(a) for confirmation of the principle that, because supervisors are management personnel obliged to be loyal to the employer's interests—and because their identity with the interests of rank-and-file employees might impair that loyalty—Congress did not intend that employers be obligated to recognize and bargain with unions including or composed of supervisors. As the relevant House Report stated:

The bill does not forbid anyone to organize. It does not forbid any employer to recognize a union of foremen. Employers who, in the past, have bargained collectively with supervisors may continue to do so. What the bill does is to say ... [t]hat no one, whether employer or employee, need have as his agent one who is obligated to those on the other side, or one whom, for *any* reason, he does not trust.

*Id.,* 416 U.S. at 661, 94 S.Ct. at 2027–2028, *citing* H.R.Rep. No. 245, 80th Cong., 1st Sess. 16, 17 (1947) (emphasis in original). Based on this clear statement of congressional intent, the Court therefore concluded that Section 14(a) constituted a bar to the assertion of wrongful discharge claims such as that advanced by plaintiff on the grounds that to allow such a claim to be maintained would "flout the national policy against compulsion upon employers from either federal or state agencies to treat supervisors as employees." *Id.,* 416 U.S. at 662, 94 S.Ct. at 2028 (citation and footnote omitted).

Plaintiff argues, however, that the extensive statutory and common law protections traditionally afforded to seamen should preclude the application of *Beasley* and Section 14(a) to his discharge by Keystone. The Court is unpersuaded by this theory, and is thus of the opinion that the complaint fails to state a claim under the general maritime laws. Plaintiff is unable to cite any authority in support of the proposition that there exists a maritime wrongful discharge tort action for breach of a seaman's shipping articles. The existing authority, rather, is to the contrary. *See, e.g. Belanger v. Keydril Co.*, 596 F.Supp. 823 (E.D.La.1984); *Nugent v. Sea-Land Service*, 1973 A.M.C. 977 (N.D.Cal.1972). That the "tort" does not presently exist thus appears certain, and nothing in the facts of this case convinces the Court that such a tort should be judicially created.

In consideration of the foregoing, therefore, defendants' motion for summary judgment is hereby granted.